PER CURIAM
*843 **668 In this lawyer disciplinary proceeding, the Oregon State Bar charged Scott W. McGraw (the accused) with multiple violations of the Oregon Rules of Professional Conduct (RPC) arising out of his actions as a conservator for Dr. Carol A. Saslow, now deceased. A trial panel of the Disciplinary Board conducted a hearing, found that the accused had violated those rules, and determined that the appropriate sanction was suspension from the practice of law for a period of 18 months. The accused seeks review of the trial panel's finding that he committed the alleged violations. For the reasons that follow, we conclude that the Bar proved some but not all of the alleged violations, and we suspend the accused from the practice of law for a period of 18 months.
I. FACTUAL BACKGROUND
We review the trial panel's decision de novo . ORS 9.536(2) ; Bar Rule of Procedure (BR) 10.6. The Bar has the burden of establishing misconduct by clear and convincing evidence. BR 5.2. Clear and convincing evidence means "evidence establishing that the truth of the facts asserted is highly probable." In re Cohen , 316 Or. 657, 659, 853 P.2d 286 (1993).
A. The Conservatorship
We find the following facts by clear and convincing evidence. Carol and Michael Saslow had been married for over 50 years and had no children. Carol Saslow was a retired psychology professor at Oregon State University, specializing in large animal and horse behavior. Michael Saslow is also a retired psychologist. They lived on a small ranch with 18 horses; the ranch was in Carol Saslow's name.
In 2010, Carol Saslow suffered a massive stroke that left her paralyzed and unable to communicate. Michael Saslow was appointed as his wife's conservator and guardian soon thereafter. He placed her in a care facility, while he remained on the ranch and cared for the horses. He bought a van to transport Carol Saslow to medical appointments and outings.
**669 By the time of the first accounting for the conservatorship, it was apparent that Michael Saslow was having trouble managing the finances. The conservatorship owed the care facility over $30,000, and he had failed to maintain car or home insurance, file income taxes, pay the mortgage, or keep up with payments on the van. A lawyer who had helped the family set up the conservatorship, Daley, recommended hiring a professional conservator to relieve Saslow. He agreed.
In June 2011, Daley posted a notice at the circuit court, and the accused responded to the notice. The accused proposed a fee schedule of $250 per hour for in-office legal work, $300 per hour for legal work performed in court, and $150 per hour for work performed in his capacity as fiduciary. The court appointed the accused as Carol Saslow's conservator.
Soon thereafter, the accused began to express concern that Michael Saslow was not cooperating with his efforts and that Saslow's lack of cooperation might be expensive and detrimental to the proceedings. The accused also determined that, although the conservatorship had enough income to pay for Carol Saslow's care, funds were insufficient to also maintain the ranch and livestock. The accused began asserting that Michael Saslow had not properly managed the conservatorship assets and that he therefore owed the conservatorship significant sums of money.
*844 In August 2011, the accused wrote a letter to Daley charging Michael Saslow with negligence or malfeasance in executing his previous duties as his wife's conservator and beginning a campaign to gain complete control over all of Saslow's assets. Among other things, in the letter, the accused demanded that Saslow sign a "liquidation agreement" to liquidate the ranch to pay certain bills and then turn over to the accused all of his personal monthly income in excess of $400.
In September 2010, the accused followed up with another letter to Daley demanding, among other things, that Michael Saslow turn over to him all of his monthly income, "along with all bill-paying functions for everything." The accused stated that he would be happy to establish a budget **670 for Saslow's living expenses but that that budget would have to be very frugal.
A couple of weeks later, the accused sent another letter to Daley, advising her that he would be objecting to the final accounting that Michael Saslow had filed after the accused's appointment. He expressed concern again over Saslow's failure to cooperate with him and stated that he might seek a conservatorship over him.
The accused and Michael Saslow entered into a settlement agreement that required Saslow to pay the mortgage on the ranch and the loan on the van that he had bought to transport Carol Saslow. The agreement purported to give the accused the authority to eject Saslow from the ranch and to take possession of the horses and other assets in the name of the conservatorship in the event that Saslow failed to comply with its terms. The court approved that settlement agreement.
A few days later, the accused moved the court for an order declaring Michael Saslow in breach of the settlement agreement, allowing the accused to sell the vehicles, equipment, and remaining horses, and permitting him, at his own discretion, to eject Saslow from the property. The court granted that requested relief in December 2011.
On December 16, 2011, the accused, in his capacity as fiduciary, wrote an email to Michael Saslow, demanding various documents and records. He closed the email with the following paragraph:
"Finally, today I spent more than four (4) hours, some of it with some productivity, and much without, in my trip to Corvallis. As of today, and until I am satisfied, I will be charging my time out at my full hourly rates as an attorney. That means that today cost $1,000.00 instead of $600.00."
The accused followed through on that threat in his fee petition in January 2013. The accused later explained that that was a "leverage technique" that he had used in other client matters.
Daley withdrew as Michael Saslow's lawyer. In December 2011, Saslow hired another lawyer, Christensen, **671 to represent him in challenging the accused's attempts to enforce the settlement agreement.
Meanwhile, on December 20, 2011, the accused filed an interim accounting and report with the court, stating that the real property was significantly encumbered and that, after the late fees were paid and required repairs completed, it was not likely that there was any net value to be realized from the property. Nevertheless, the accused repeatedly threatened to evict Michael Saslow from that property, for the purpose of attempting to compel Saslow to comply with his demands. At the same time, he berated Saslow over his failure to make payments on the van, and he repeatedly threatened to repossess the van (Saslow's only means of transporting his wife). In fact, in March 2012, the accused informed Christensen that he would be taking possession of Saslow's house and the van on April 2. However, the accused did not take action on that threat until sometime later.
In July 2012, the accused filed a petition to appoint himself as Michael Saslow's conservator, paying the filing fee with funds from Carol Saslow's conservatorship estate. The petition asserted that Saslow was financially incapable. In support, it cited Saslow's financial difficulties as conservator for his wife. In addition, the accused filed a motion to force Saslow to submit to a physical and mental examination to show his "fitness" to act as his wife's guardian and to manage his own *845 financial affairs. The court denied that motion.
In October 2012, the accused filed a petition to remove Michael Saslow as Carol Saslow's guardian and to have himself appointed instead. In that petition, he cited Saslow's failure to cooperate with him and Saslow's failure to provide for his wife's ongoing medical needs. Shortly after, the accused acknowledged a "claim of conflict between himself and Michael Saslow" and amended the petition in which he had sought his own appointment as Saslow's conservator. He proposed instead that another lawyer, Griffith, be appointed to serve as Saslow's conservator. The accused also proposed Griffith as an alternative to himself as Carol Saslow's successor guardian. The accused billed the time he **672 spent on all of the foregoing endeavors to Carol Saslow's conservatorship estate.
After filing the petition to have himself appointed Carol Saslow's guardian, the accused wrote a letter to the Saslows' friends and relatives, encouraging them to support that effort and his attempt to require Michael Saslow to submit to a mental and physical examination. The letter asked the recipients to make themselves available for the proceedings and the court visitor.
As required under court rules, the court appointed a court visitor in October 2012, the fee for which was paid out of Carol Saslow's conservatorship. The visitor concluded that Michael Saslow was not financially incapacitated and that he was capable of making reasoned decisions about his finances. The accused subsequently withdrew the conservatorship petition.
In November 2012, Christensen moved to modify the settlement agreement, which, as noted, authorized the accused to remove vehicles, equipment, and livestock from the ranch and to eject Michael Saslow from his home. Christensen argued that the agreement was abusive, in part because the home was not a viable conservatorship asset, given that, as the accused himself had reported to the court, it was unlikely that there would be any net value to be realized from a sale of the property. Christensen also argued that the accused had made unjustifiable demands on Michael Saslow for money, documents, and other things, and frequently threatened to evict him from his home.
In February 2013, the accused responded by, among other things, moving for sanctions against Michael Saslow and asking the court for advice whether to report Christensen to the Bar and to press the Benton County District Attorney to prosecute Saslow for "various fiduciary and other crimes based on his financial activity as original Conservator for Carol Saslow." Separately, the accused also sought approximately $37,000 in fees.
The court held a hearing in March 2013 and then issued a letter ruling and subsequent order that dealt with all of the foregoing matters, including the request for **673 attorney fees. The court's letter ruling included the following findings and rulings.
First, respecting the accused's petition to replace Michael Saslow as Carol Saslow's guardian, the court noted that, at the hearing, the court visitor supported allowing Saslow to remain as guardian if he agreed to certain conditions. Accordingly, the court ruled that Saslow should conditionally remain as Carol Saslow's guardian.
Second, with regard to Michael Saslow's motion to modify the settlement agreement, the court observed the obvious animosity between the accused and Saslow and stated,
"This animosity and conflict has caused [the accused] to very aggressively enforce the terms and conditions in the Settlement Agreement * * * in a way that appears to the Court to be unnecessary and unwise."
Accordingly, the court modified its earlier order on the settlement agreement to require the accused to obtain prior court approval before seeking to enforce any of the settlement agreement terms. Additionally, the court specifically stated that the accused did not have authority either to remove from Saslow's possession the van that he used to visit and assist his wife or to eject Saslow from his home without prior court approval.
Third, the court denied the accused's request for instruction whether to report Christensen to the Bar and to report Michael Saslow to the district attorney for prosecution, stating,
*846 "To say the least this is a very unusual request and one that the Court cannot grant. The Court has no legal authority to instruct the conservator regarding these matters. If the conservator wishes to proceed personally in his own name to pursue either of these matters then that will be up to him to make that determination."
And fourth, the court reduced the accused's fee request from $37,000 to about $24,000. Among the reasons for that reduction was what the court referred to as the many errors and "miscategorization of work that should properly be billed as Fiduciary Time but was actually billed **674 as Attorney Time," specifically pointing to the accused's December 16, 2011, email informing Saslow that he would be charging the time he spent on fiduciary work at the higher attorney-fee rate. The court explained:
"[T]here was and continues to be animosity and conflict between [the accused] and Dr. Saslow. It's apparent that this has clouded the vision of [the accused] to the point that he is willing to petition the court to take money away from the protected person Carol A. Saslow to teach a lesson to Dr. Saslow."
In July 2013, the accused moved the court for an order requiring Michael Saslow to turn over the van that he used to transport his wife to appointments, because Saslow had been late with payments on the van and had allowed the insurance on the vehicle to lapse. The accused requested an injunction permitting him to take possession of the van and sell it. The court denied the motion, noting that, although Saslow had been driving the van without insurance for a short time, that problem had been cured and the conservatorship estate had not incurred any financial loss involving the van based on Saslow's actions. The court continued:
"It was obvious at the hearing that Dr. Saslow's actions, or in some cases lack of action, are extremely emotionally frustrating to [the accused]. It is also apparent to the Court that Dr. Saslow needs the vehicle in his possession in order to fulfill his responsibilities as the guardian for his wife Carol A. Saslow. * * * [I]t would be unwise and unjust under the circumstances to require Dr. Saslow to relinquish possession of this vehicle[.]"
In September 2013, Carol Saslow died. Her will named Michael Saslow as her personal representative. A week later, the accused moved the probate court to remove Saslow as personal representative. The accused later billed the conservatorship estate for the time he spent opposing Saslow being named personal representative in the probate estate. Saslow's lawyer, Christensen, then moved to terminate the conservatorship. The accused opposed that motion. He also wrote a letter to Carol Saslow's relatives and creditors, urging them to support his bid to remove Michael Saslow as personal representative and urging **675 the creditors to continue to pursue claims against Carol Saslow's estate, even if they had felt reluctant to do so in the past.
The accused then submitted a final accounting of the conservatorship. The accused asked for fees and costs amounting to about $42,000, as well as an additional $5,000 in "reserve" for a final accounting.
In November 2013, the accused sent another letter to Carol Saslow's friends, relatives, and creditors, this time urging them to "band together" to object to Michael Saslow's request for payment of fees as Carol Saslow's guardian. He added that
"I also believe any of you creditors in this matter also have the right to press the eventual Successor Personal Representative to make claims against [Michael Saslow] for those claims, and for the elder financial abuse of Carol Saslow based upon his knowing misuse and conversion of his wife's assets."
The accused's letter pointed out that the successor personal representative would be entitled to treble damages in an action against Michael Saslow and that that would benefit Carol Saslow's estate, "first to the benefit of creditors." Moreover, the creditors' banding together would "help put Michael Saslow unequivocally last in line for receiving anything further from the Carol Saslow Estate."
The court reduced the accused's fee and cost award from the requested $47,000 to *847 about $27,000. The court noted that a conservator is bound by statute to manage the estate's affairs for the exclusive benefit of the ward and to protect her economic interests. But, the court concluded, the accused did not follow that principle. The court observed that the conservatorship estate had brought in about $92,000, but that the accused was requesting approximately $47,000 in additional fees, for a total of approximately $71,000 billed to the conservatorship estate. The court stated,
"I have mentioned in previous hearings in this case that there appears to be a very high level of animosity and conflict between [the accused] and Dr. Saslow and his counsel. This animosity that sometimes borders on hatred seems to be the catalyst for much of the litigation that has **676 occurred in this case in the last two and one-half years. This is truly a 'high conflict' conservatorship. I believe that if [the accused] had had independent legal counsel advising him in this matter that much of the litigation that was instigated by [the accused] would not have occurred. [The accused] being his own counsel has caused endless problems in these proceedings that I believe could have been avoided if he had received unbiased advice."
The court went on to note that it had substantially reduced all claimed attorney fees and expenses relating to the accused's motion to replace Michael Saslow as his wife's guardian. It also reduced the fees related to the accused's efforts to take possession of the van, because they were "far in excess of anything that could be considered reasonable based on the issues involved." It disallowed all time spent on the accused's attempt to have the district attorney bring criminal charges against Saslow, and it entirely disallowed fees and expenses related to removing Saslow as the personal representative of his wife's estate. The court concluded,
"Unfortunately a recurring theme in the litigation in this conservatorship is based on [the accused] taking unsupportable positions and then charging exorbitant fees in defending his unreasonable positions when they received objections."
B. Disciplinary Proceeding
In July 2015, the Bar filed a formal amended complaint against the accused, alleging that he had violated several disciplinary rules. First, the Bar alleged that the accused violated RPC 1.5(a) (charging excessive fees)[1] when he charged the conservatorship estate fees for fiduciary services at the higher attorney-fee rate and when he charged the conservatorship estate for the time he spent seeking to become Michael Saslow's conservator, seeking to have criminal charges brought against Saslow, and opposing Saslow's appointment as personal representative of Carol Saslow's estate.
**677 Second, the Bar alleged that the accused violated RPC 3.1 (knowingly advancing a meritless position)[2] when he knowingly attempted to hold Michael Saslow personally liable for conservatorship obligations without a legal basis, when he asked law enforcement to file criminal charges against Saslow, and when he attempted to have himself appointed as Saslow's conservator without adequate evidence that Saslow needed a conservator.
Third, the Bar alleged that the accused violated RPC 4.4(a) (taking action with no substantial purpose other than to embarrass, harass, or burden another)[3] when he sent letters to the Saslows' friends, family, and creditors seeking support for his proposals to be appointed conservator over Michael Saslow *848 and to have Saslow removed as his wife's guardian, and, later, urging creditors to band together to pursue recovery from Carol Saslow's probate estate and to press claims against Michael Saslow for elder abuse, among other things.
Fourth and finally, the Bar alleged that the accused violated RPC 8.4(a)(4) (engaging in conduct prejudicial to the administration of justice)[4] when he charged excessive fees, threatened to eject Michael Saslow from his home and repossess the van in an effort to bring Saslow under his control, tried to have himself appointed as Saslow's conservator, and sent letters to the creditors encouraging them to pursue recovery from Carol Saslow's estate.
**678 The accused denied that any of the conduct alleged by the Bar violated any Rule of Professional Conduct.
We discuss the panel's findings in detail in our analysis of each of the causes of complaint below. In brief, the trial panel found as follows:
As to the alleged violation of RPC 1.5(a), the trial panel found that the accused charged an excessive fee (1) when he submitted a bill to the circuit court that charged for time he had spent doing fiduciary work on behalf of Carol Saslow's conservatorship at the rate that he had agreed to charge for legal work rather than at the lower rate that he had agreed to charge for fiduciary work; and (2) when he submitted a bill to the circuit court that charged Carol Saslow's conservatorship for time he spent doing work that did not advance her interests, including attempting to install himself as Michael Saslow's conservator, attempting to remove Saslow as his wife's guardian, attempting to require Saslow to submit to a mental and physical examination, attempting to remove Saslow as personal representative of his wife's estate, and seeking to have criminal charges filed against Saslow for "fiduciary and other crimes" based on Saslow's activities as conservator for his wife.
As to the alleged violation of RPC 3.1, the trial panel found that the Bar had failed to present clear and convincing evidence of two of the three allegations, namely, that the accused had knowingly advanced meritless positions in attempting to hold Michael Saslow personally liable for conservatorship obligations and in asking the court to instruct him to seek criminal charges against Saslow. The panel found that the Bar did present clear and convincing evidence of the third allegation, viz. , attempting to have himself appointed as Saslow's conservator without adequate evidence that Saslow needed one.
Regarding the third cause of complaint, the trial panel found that the accused took actions that served no substantial purpose other than to harass or burden Michael Saslow, in violation of RPC 4.4(a).
And concerning the fourth cause of complaint, the trial panel found that the accused engaged in conduct **679 prejudicial to the administration of justice in violation of RPC 8.4(a)(4) by (1) charging excessive fees, (2) requiring Michael Saslow to accept an onerous settlement agreement, (3) petitioning to become Saslow's conservator, (4) attempting to repossess Saslow's vehicle and eject him from his home, (5) objecting to the payment of Saslow's guardian fees, and (6) writing letters to the creditors of Carol Saslow's conservatorship estate, which (among other things) disparaged the integrity and competency of the circuit court judge.
Turning to the question of the sanction, the trial panel determined that it was appropriate to suspend the accused from the practice of law for a period of 18 months.[5]
*849 II. ANALYSIS
We begin with an analysis of each of the violations that the trial panel found, followed by an analysis of the appropriate sanction.
A. Rule of Professional Conduct 1.5(a)
We first address the trial panel's finding that the accused charged an excessive fee in violation of RPC 1.5(a), which provides:
"A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee or a clearly excessive amount for expenses."
As we have noted, the trial panel found that the accused violated that rule in two general respects: (1) he submitted a bill to the circuit court that charged for time he had spent doing fiduciary work on behalf of Carol Saslow's conservatorship at the rate that he had agreed to charge for legal work rather than at the lower rate that he had agreed to charge for fiduciary work; and (2) he submitted a bill to the circuit **680 court that charged Carol Saslow's conservatorship for time he spent doing work that did not advance her interests.
On review, the accused asserts that RPC 1.5(a) does not apply to cases in which a lawyer must have permission from a court before any charge can be billed or collected by an estate. In this case, he argues, his fee requests were submitted to court for approval pursuant to ORS 125.095, which requires prior court approval before the payment of fees from the funds of a person subject to a protective proceeding. According to the accused, when a statute requires an attorney fee request to be submitted to a court for approval, the circuit court-and not the Bar-is the final arbiter of whether the charges are reasonable or excessive. If the court has determined that given charges are reasonable, he argues, it cannot be said that the lawyer who submitted them "charged" or "collected" an excessive fee.
We disagree. RPC 1.5(a) provides that a lawyer "shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee." It includes no exception for situations in which fees must be approved by a court. And, in fact, this court has found that a lawyer has collected an excessive fee in cases in which the fee was previously subject to review by the circuit court. In In re Potts/Trammel/ Hannon , 301 Or. 57, 69, 718 P.2d 1363 (1986), for example, the court rejected the argument that a probate judge's approval of a fee request was conclusive on the question whether the fee was excessive in violation of disciplinary rules. Likewise, in In re Stauffer , 327 Or. 44, 64, 956 P.2d 967 (1998), the court found that the accused had violated the prohibition against collecting or charging an excessive fee even though the fee had been subject to approval by the probate court.
Aside from that, the accused's argument is predicated on the assumption that the only fee that matters under RPC 1.5(a) is the one ultimately approved by the circuit court, not the fee that he submitted for approval. The rule itself, however, prohibits either charging or collecting an excessive fee. Webster's Third New Int'l Dictionary (unabridged ed. 2002) defines "charge," as relevant here, as follows:
**681 "5 a (1) : to impose a pecuniary burden on < ~ his estate with any debts incurred> (2) : to impose or record as a pecuniary obligation < ~ his debts to an estate> b (1) : to fix or ask (a sum) as a fee or payment < ~ $10 for his services> (2) : to ask payment of (a person) < ~ a client for expenses>[.]"
Id . at 377. As those definitions make clear, the accused "charged" Carol Saslow's conservatorship estate for the fees that the Bar alleges are excessive when he submitted his fee request to the court. That is, the accused asked for those fees as payment for his work, in the hope and expectation that the court would approve them and that he would then collect them from the estate. Thus, if the fee that the accused submitted to the court was excessive, he violated RPC 1.5(a).
Turning to the specific allegations against the accused, we agree with the trial panel that he charged a clearly excessive fee within the meaning of RPC 1.5(a) when he charged fees for work as an attorney for what he does not deny was fiduciary work. As the accused recognized when he agreed to charge less for fiduciary work than for attorney work, the *850 labor involved in performing fiduciary work did not support charging attorney fees for that work. Moreover, when the accused charged the conservatorship estate attorney fees for fiduciary work, he violated the terms under which he was appointed as Carol Saslow's conservator. It follows that, in doing so, he charged more than the client had agreed to pay. We find that the Bar has proved by clear and convincing evidence that the accused violated RPC 1.5(a) by charging attorney fees for fiduciary work.
We also agree with the trial panel that the accused charged an excessive fee when he charged the conservatorship estate for work, among other things, attempting to obtain a conservatorship over Michael Saslow and requesting the court to instruct him to seek criminal charges against Saslow. None of those activities advanced the interests of Carol Saslow's conservatorship. Rather, as the trial panel found, they reflected only the accused's "dogged adherence to a failed combined formula of threats and legal proceedings" designed to force Michael Saslow to bend to his will, which did nothing to benefit Carol Saslow.
**682 The accused insists that he believed that his actions were necessary to protect Carol Saslow's conservatorship estate assets, that Michael Saslow's failure to cooperate with him was a threat to those assets, and that, as a result, the actions that he took to correct what he regarded as detrimental to the assets were appropriate and necessary. We understand that the accused may have believed that his actions were appropriate and necessary to protect the conservatorship assets. But his belief in the righteousness of his conduct is not a defense to the allegation that he charged an excessive fee in violation of RPC 1.5(a). In determining whether the accused charged an excessive fee, we apply an objective standard. See RPC 1.5(b) (fee is "clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee"). And, considering the matter objectively, we conclude that the foregoing conduct cannot reasonably be seen to have advanced Carol Saslow's interests or welfare.
First, the accused's attempt to seek a conservatorship over Michael Saslow provided no legitimate benefit to Carol Saslow. Under the statute authorizing proceedings for a protected person, the only permissible basis for seeking a conservatorship over a respondent is an interest in the welfare of the respondent . ORS 125.010 ("any person who is interested in the affairs or welfare of a respondent may file a petition for the appointment of a fiduciary"). That is, the only legitimate reason for seeking a conservatorship over Michael Saslow was to advance Michael Saslow's interests, not his wife's. Charging Carol Saslow's conservatorship estate for time spent seeking a conservatorship over Michael Saslow, therefore, was excessive.
Second, the accused's request to the circuit court for an instruction to seek criminal charges against Michael Saslow in no way advanced Carol Saslow's interests. Even assuming for the sake of argument that an eventual prosecution of Carol Saslow's husband for elder abuse would somehow be of benefit to her, there was no reason for the accused to spend time asking the court for an instruction to seek such a prosecution and then to bill Carol Saslow's conservatorship estate for that time. If the accused believed **683 that Michael Saslow had committed a crime, nothing prevented him from simply telephoning the district attorney to suggest bringing criminal charges against Saslow.
B. Rule of Professional Conduct 3.1
We turn to the trial panel's conclusion that the accused violated RPC 3.1. That rule prohibits a lawyer from knowingly bringing a legal proceeding or asserting a legal position without "a basis in law or fact for doing so that is not frivolous." Stated slightly differently, "a lawyer takes a 'frivolous' position when there is no basis in law or fact for that legal position." In re Obert , 352 Or. 231, 256, 282 P.3d 825 (2012). In In re Marandas , 351 Or. 521, 539, 270 P.3d 231 (2012), this court held that a legal position is not "frivolous" within the meaning of RPC 3.1 if it is "plausible," regardless of whether the position taken ultimately is found to be correct.
*851 As we have noted, the Bar alleged that the accused violated RPC 3.1 in three separate ways: (1) in attempting to hold Michael Saslow personally liable for conservatorship obligations without a legal basis; (2) in attempting to have criminal charges brought against Saslow for financial elder abuse; and (3) in attempting to place himself as Michael Saslow's conservator. The trial panel concluded that the Bar had failed to present clear and convincing evidence of the first two allegations, but that the Bar had proved the third allegation. On de novo review, we conclude that the Bar has failed to meet its burden to prove that the accused violated RPC 3.1 in any of the ways alleged.
As to the first allegation, the trial panel found that the Bar had not presented sufficient evidence relating to the Saslows' finances to enable it to conclude that the accused acted outside the law in seeking contribution from Michael Saslow for conservatorship expenses. We agree. It is evident from the record that Michael Saslow wanted to continue to live on the ranch and to maintain the horses, that the ranch was solely owned by Carol Saslow, and that there was not enough income or funds in the estate to maintain the ranch and the horses and to pay other expenses related to Carol Saslow's care, which was the first priority **684 of the conservatorship. As the trial panel observed, something had to give. It is undisputed that the accused sought contribution for the maintenance of the ranch and livestock from Michael Saslow at a time when he was living on the property. As the Bar explains, the accused did so in part by imposing an onerous settlement agreement on Saslow, under which Saslow took responsibility for certain conservatorship debts and which gave the accused extreme remedies for noncompliance. Nevertheless, Saslow, represented by counsel, signed that agreement. We cannot, under the circumstances, conclude that there was no plausible legal basis for the accused's efforts to force Saslow to contribute to the maintenance of conservatorship assets.
As to the second allegation, the trial panel found that the Bar had failed to establish that there was no plausible legal basis for the accused to advocate for criminal charges to be brought against Michael Saslow. Again, we agree. As set out in a motion for sanctions against Saslow, which the accused filed in the circuit court in February 2013, the accused believed that Saslow had misused conservatorship assets when he was his wife's conservator. Specifically, the accused attached a document to that motion that purported to be a "reproduction" of Saslow's financial transactions as conservator, apparently taken from Saslow's own records, which the accused claimed showed that Saslow had spent some of his wife's resources for his own benefit. As the trial panel concluded, if Saslow had misappropriated some of Carol Saslow's funds for his own use, then referring him to the district attorney for criminal charges would not be frivolous.
The Bar counters that the accused contended at the disciplinary hearing that he had a legitimate interest in seeking to have Michael Saslow prosecuted for elder abuse because it would have disqualified Saslow from inheriting from his wife, which, in turn, would have maximized the amounts available to creditors of the estate. According to the Bar, the fact that the accused had an ulterior motive for seeking criminal charges against Saslow shows that that effort was frivolous.
It does not, however. A lawyer's personal motivation for asserting a legal position is irrelevant to the question **685 whether the lawyer's assertion of a legal position is frivolous. See In re Leuenberger , 337 Or. 183, 196, 93 P.3d 786 (2004) (under former DR 7-102(A)(2), predecessor of RPC 3.1, proper focus is on the legitimacy of the legal position asserted rather than on an accused's motivation in taking a particular action). Under RPC 3.1, a lawyer may not knowingly bring a proceeding or assert a position "unless there is a basis in law or fact for doing so that is not frivolous." And, as discussed, this court has stated that a legal position is not frivolous if it is "plausible." Marandas , 351 Or. at 539, 270 P.3d 231. Thus, in determining whether the accused violated RPC 3.1 in attempting to seek criminal charges against Michael Saslow, our inquiry is limited to asking whether there was a plausible legal *852 basis for that effort. The accused has contended that Saslow misappropriated conservatorship assets when he was his wife's conservator, and the Bar has never disputed that contention. We cannot conclude, therefore, that the accused lacked a plausible legal basis for seeking to have Michael Saslow prosecuted for financial elder abuse.
Finally, as to the third allegation, the trial panel found that the accused violated RPC 3.1 by pursuing his own appointment as Michael Saslow's conservator without adequate evidence that Saslow needed a conservator. Although the trial panel noted that, in his petition, the accused offered some evidence of Saslow's need for a conservator, it found that the accused's main motivation for seeking a conservatorship over Saslow was not to benefit Saslow, but to protect the assets of Carol Saslow's conservatorship estate. The trial panel observed that, while the petition did not explicitly state that the accused had sought the conservatorship over Michael Saslow to dedicate his assets to fund Carol Saslow's conservatorship, it did state that, to resolve the "financial dilemmas which exist," the accused offered a plan "to liquidate, to the extent available and necessary, any retirement funds of Michael G. Saslow." Based on that statement, the trial panel found that it appeared that the accused planned to use the proposed new conservatorship to allow Michael Saslow's funds to be used to pay not only for his expenses but also for creditor claims against Carol Saslow's conservatorship. It followed, the trial panel held, that the accused did not propose the conservatorship over Saslow primarily out of **686 concern for Saslow's welfare. For that reason, the trial panel concluded that the accused violated RPC 3.1 in pursuing a conservatorship over Michael Saslow.
Again, however, the accused's motivation in bringing a legal proceeding is irrelevant to our determination whether he violated RPC 3.1. The only consideration relevant to that determination is whether he brought the conservatorship proceeding without "a basis in law and fact for doing so that is not frivolous." On de novo review, we cannot conclude that the accused lacked a plausible legal basis for seeking a conservatorship over Michael Saslow.
The accused was permitted by applicable statute to seek a conservatorship over Michael Saslow if he had an "interest" in Saslow's welfare. ORS 125.010 ("Any person who is interested in the affairs or welfare of a respondent may file a petition for the appointment of a fiduciary [.]"). As the trial panel acknowledged, the accused did produce some evidence to support his application for a conservatorship over Saslow. In the application, the accused alleged that Saslow had been unable to manage his wife's financial affairs when he was her conservator, that Saslow had not been helpful in resolving the default on the mortgage on the residence, that Saslow had failed to make all required payments on the van, and that Saslow had resisted complying with the accused's demands for information that the accused needed in administering Carol Saslow's conservatorship. In support of those allegations, the accused submitted affidavits of two longtime friends of Michael Saslow, attesting to their concern for his physical, cognitive, and financial wellbeing. The accused ultimately was not successful in the endeavor to become Saslow's conservator, but that fact is irrelevant to the question whether there was a legal basis for it. As this court stated in Marandas , a legal position is not "frivolous" within the meaning of RPC 3.1 if it is "plausible," even if the position taken later is found to be incorrect. 351 Or. at 539, 270 P.3d 231. On this record, we cannot conclude that the accused lacked a plausible legal basis for pursuing a conservatorship over Michael Saslow.[6]
**687 C. Rule of Professional Conduct 4.4(a)
The Bar alleged, and the trial panel found, that, in sending three letters to the *853 Saslows' friends, family, and creditors, the accused took actions that served no substantial purpose other than to harass or burden Michael Saslow, in violation of RPC 4.4(a). The first letter, dated October 26, 2012, was addressed to "Family and Friends of Michael and Carol Saslow." In it, the accused advised the recipients that he had initiated a conservatorship proceeding over Saslow, that he was seeking to have Saslow removed as his wife's guardian, and that he was asking the court to order Saslow to undergo a physical and psychological evaluation, and he generally sought support for those proposed actions. The letter asked the recipients to make themselves available for those proceedings, including being available for inquiries from a court visitor.
The second letter, dated October 28, 2013, was addressed to "Family and Creditors of Carol Saslow" and was sent after Carol Saslow had died. In the letter, the accused warned creditors that "some things are in the works to attempt to keep you from being paid as much as you should be paid," and he urged creditors to continue to pursue recovery from Carol Saslow's conservatorship estate. The accused also informed the recipients, and "especially the creditors/claimants," that the estate contained sufficient assets to pay all sums rightfully due them and asked them to "come forward to further protect your interests." Finally, the accused noted that Michael Saslow had agreed to relinquish his role as personal representative of Carol Saslow's probate estate and urged the recipients to oppose his effort to name his own replacement to that position.
The third letter was dated November 28, 2013, and was addressed to "interested persons/creditors of Carol and/or Michael Saslow." In that letter, the accused urged **688 creditors to appear in the probate proceeding to press their claims for amounts due them, as well as to "band together" to oppose Michael Saslow's request for payment of fees and expenses due him as his wife's guardian. The accused also advised the recipients that they had a right to press claims against Michael Saslow for "the elder financial abuse of Carol Saslow based upon his knowing misuse of and conversion of his wife's assets" and that, if successful in that effort, the estate would be entitled to actual damages plus treble damages, as well as costs and attorney fees. Such an effort would be advisable, the accused informed the recipients, because any recovery would ultimately benefit the creditors and because it would "help put Michael Saslow unequivocally last in line for receiving anything further from the Carol Saslow Estate." Among other things, the letter also accused Michael Saslow and Christensen of wrong-doing, including attempting to "create an appearance of insolvency" even though the estate was not insolvent, and it disclosed Michael Saslow's approximate monthly income from PERS, Social Security, and TIAA/CREF. Finally, the accused impugned the integrity and competency of the judge who had heard various matters in the conservatorship proceedings.
Finding that the accused violated RPC 4.4(a) when he sent the letters, the trial panel explained that the accused had provided no authority for the proposition that the accused was obligated to encourage creditors to pursue claims against Carol Saslow's conservatorship or against Carol Saslow's probate estate after her death. The trial panel noted that ORS 125.520, which sets out the order of payment of expenses if it becomes likely that the estate of a protected person will be exhausted before all claims are paid, puts "other claims," which would include creditors' claims, fifth on the five-category priority list of claims. Moreover, the trial panel stated, at the time that the accused sent the second and third letters, he no longer had authority to act as conservator. ORS 125.230(1) (authority of conservator terminates on death of protected person). Accordingly, the panel concluded, sending the letters did not advance the interests of Carol Saslow's conservatorship or probate estate and served no other legitimate purpose.
**689 On review, the accused argues that he had a purpose other than embarrassment, delay, or harassment in sending each of those letters. Specifically, he contends that, after Carol Saslow died, he had a legal duty under ORS 125.230 to continue to administer the estate until a final accounting has been approved and he, as the fiduciary, was discharged *854 by the court. He contends that, to carry out his duty to make a full and accurate accounting, he was required to inform the creditors of the conservatorship about the status of the conservatorship so that all debts of the conservatorship would be properly accounted for. He also claims that, under ORS 125.425 (authorizing conservator to pay expenses of the protected person), he could be held personally liable if he were to pay out sums claimed by the guardian to be for the benefit of the protected person if the conservator knows that the guardian is deriving personal benefit from those payments. According to the accused, that means that he was required to fully inform Carol Saslow's creditors of "all financial issues of which he is aware," including all of Michael Saslow's alleged misdoings, so that they too could make their own fully informed decisions.
RPC 4.4(a) provides:
"In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person."
This court has not analyzed the wording and meaning of that rule. But a look at the cases decided under the predecessor rule, former DR 7-102(A)(1), is instructive. That predecessor rule provided that a lawyer shall not assert a position or take an action "when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another." This court interpreted that rule to apply only if a lawyer took an action for the sole purpose of harassing or maliciously injuring another person. Leuenberger , 337 Or. at 196, 93 P.3d 786 (use of word "merely" in former DR 7-102(A)(1) meant that that rule prohibited conduct "aimed solely" at harassment or malicious injury); In re Hockett , 303 Or. 150, 160, 734 P.2d 877 (1987) (lawyer did not **690 violate former DR 7-102(A)(1) even though his conduct in fact harassed and injured clients, because "that was not his sole aim"); In re Hopp , 291 Or. 697, 700, 634 P.2d 238 (1981) (lawyer violated former DR 7-102(A)(1) when he admitted he had had "no other purpose" than to harass opposing counsel).
RPC 4.4(a) is different in a couple of key respects. First, it prohibits lawyers from using means "that have no substantial purpose" other than to "embarrass, delay, harass or burden a third person." The phrase "no substantial purpose" suggests that a lawyer may violate the rule even if he or she had some purpose other than harassing or otherwise burdening another, as long as that other purpose was not "substantial." Second, under RPC 4.4(a), a lawyer may violate the rule not only by harassing or causing "malicious injury" to another, but also by "embarrassing," "delaying," or "burdening" a third person. With that in mind, we turn to the contentions of the accused.
The accused is correct that, although the death of a protected person terminates the authority of the conservator to act as a fiduciary, ORS 125.230(1), the conservator still must account to the court for the administration of the protected estate, ORS 125.475, and deliver the assets of the protected person to the personal representative or other persons entitled to the estate of the decedent, ORS 125.530. The conservator may be discharged only by order of the court, after a final report or accounting has been approved by the court. ORS 125.230(2). None of those statutory obligations, however, bears on the need for sending any of the letters to friends and creditors of Carol Saslow. Specifically, none of those obligations required the conservator to encourage potential or known creditors to file claims against the conservatorship or probate estate.
The accused identifies no other legitimate reason to disparage Michael Saslow and his lawyer to the creditors, family, and friends of the Saslows, or to deprive Saslow of payment for his expenses as guardian, or to attempt to ensure that he did not inherit from his wife's estate. In fact, the letters' explicit attempts to rally the creditors against Michael Saslow made the administration of his wife's estate more difficult. We conclude that the letters-in particular, **691 the second and third letters that the accused sent to creditors and others-served no substantial purpose other than to "embarrass, delay, harass or burden" *855 Michael Saslow. For that reason, we agree with the trial panel that the accused violated RPC 4.4(a).
D. Rule of Professional Conduct 8.4(a)(4)
Finally, the trial panel found that the accused violated RPC 8.4(a)(4), which provides:
"It is professional misconduct for a lawyer to * * * engage in conduct prejudicial to the administration of justice[.]"
The Bar alleged that the accused's conduct in (1) charging excessive fees, (2) requiring Michael Saslow to accept an onerous settlement agreement, (3) petitioning to become Saslow's conservator, (4) attempting to repossess Saslow's vehicle and eject him from his home, (5) objecting to the payment of Saslow's guardian fees, and (6) writing letters to the creditors of Carol Saslow's conservative estate, which (among other things) disparaged the integrity and competency of the circuit court judge, together amounted to conduct prejudicial to the administration of justice. The trial panel agreed that all of the foregoing conduct was excessively aggressive and litigious and "disturbed not only the participants but was expensive and took court time without positive result." The trial panel stated that those actions "illustrate a pattern of conduct prejudicial to the administration of justice."
To establish a violation of RPC 8.4(a)(4), the Bar must show that (1) the accused lawyer's action was improper; (2) the accused lawyer's conduct occurred during the course of a judicial proceeding or a proceeding with the trappings of a judicial proceeding; and (3) the accused lawyer's conduct had or could have had a prejudicial effect on the administration of justice. Marandas , 351 Or. at 536, 270 P.3d 231 (so stating); In re Kluge , 335 Or. 326, 345, 66 P.3d 492 (2003) (stating same standard under identical predecessor rule, former DR 1-102(A)(4) ). Conduct is not "improper" if it has been found not to violate the disciplinary rules. Marandas , 351 Or. at 537-38, 270 P.3d 231 (Bar failed to prove that lawyer acted improperly for purposes of RPC 8.4(a)(4) by advancing frivolous positions **692 and making knowing misrepresentations to court, because it failed to prove by clear and convincing evidence that lawyer engaged in that alleged misconduct). The "administration of justice" refers both to "the procedural functioning of the proceeding and the substantive interests of the parties." Kluge , 335 Or. at 345, 66 P.3d 492 ; In re Meyer , 328 Or. 211, 214, 970 P.2d 652 (1999) (to same effect).
As this court has stated, "not every negligent or unprofessional act, no matter how misguided, boorish, or rude, gives rise to" a violation of RPC 8.4(a)(4). In re Paulson , 341 Or. 13, 27, 136 P.3d 1087 (2006) (so stating with respect to identical predecessor rule, former DR 1-102(A)(4) ). Rather, to violate the rule, the conduct must have resulted in prejudice. And, for purposes of RPC 8.4(a)(4), "prejudice may arise from several acts that cause some harm or a single act that causes substantial harm to the administration of justice." Kluge , 335 Or. at 345, 66 P.3d 492.
In this case, it is undisputed that all of the conduct to which the Bar points occurred in the course of a judicial proceeding or a proceeding with the trappings of a judicial proceeding. The questions remain whether any or all of the conduct alleged was "improper" as that word is used in RPC 8.4(a)(4) and whether it had or could have had a prejudicial effect on the administration of justice.
Some of the conduct at issue clearly was not improper within the meaning of the rule. As we noted above, the accused had at least a plausible basis for seeking to become Michael Saslow's conservator and, as a result, he did not thereby violate RPC 3.1. Therefore, that conduct cannot have violated RPC 8.4(a)(4).
Some of the conduct presents a closer case. Specifically, it is not entirely clear how pressing Michael Saslow to accept the settlement agreement was improper when Saslow was represented by counsel at the time and the agreement was approved by the circuit court. In a similar vein, the acts of attempting to repossess the vehicle and attempting to eject Saslow from his home were remedies expressly provided for in the court-approved settlement agreement. That said, the accused's conduct in attempting to eject Saslow from his home in the manner in which he *856 did-that is, after **693 the accused had reported to the court that doing so would not likely provide any financial benefit to Carol Saslow or the conservatorship estate-seems closer to improper conduct.
We need not resolve those matters however. Other conduct of the accused was clearly improper and clearly prejudiced the administration of justice. The accused's charging of what the circuit court characterized as "exorbitant fees" amounted to an abuse of the proceedings, because, among other reasons, as the circuit court judge testified at the disciplinary hearing, it required the judge to conduct a line-by-line review of the accused's bills. The letters that the accused sent to the Saslows' family and creditors undermined Michael Saslow's ability to act as his wife's guardian and, later, personal representative, and, as noted, disparaged the circuit court judge's integrity and competence. We conclude that the Bar has proved by clear and convincing evidence that the accused's conduct in connection with the Carol Saslow conservatorship was prejudicial to the administration of justice in violation of RPC 8.4(a)(4).
E. Sanction
To summarize, we hold that the Bar has proved by clear and convincing evidence that the accused violated RPC 1.5(a), RPC 4.4(a), and RPC 8.4(a)(4). We now turn to the question of the appropriate sanction for those violations. In so doing, we note that the accused has not challenged the sanction that the trial panel imposed.
In determining the appropriate sanction for violations of the disciplinary rules, this court follows the framework set out in the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (amended 1992) (ABA Standards). Using the ABA Standards, we make a preliminary determination of the appropriate sanction by considering the duty violated by the accused, the accused's mental state, and the injury caused by the accused's misconduct. ABA Standard 3.0. We then consider the existence of any aggravating or mitigating circumstances that may justify either an increase or a reduction in the degree of sanction to be imposed. ABA Standard 9.2; 9.3. Finally, we evaluate the appropriate sanction in light of this court's case law. See **694 Paulson , 341 Or. at 29-34, 136 P.3d 1087 (describing and applying court's methodology for determining appropriate sanction in lawyer discipline cases).
In violating RPC 1.5(a), the accused breached his duty as a professional to refrain from charging excessive fees. ABA Standard 7.0. In violating RPC 4.4(a), the accused breached his duty to the legal system to avoid abuse of the legal process. ABA Standard 6.2. And in violating RPC 8.4(a)(4), the accused breached his duties to the public and to the legal system. ABA Standard 5.2; 6.1.
Turning to the accused's mental state, the trial panel found that the accused intentionally used punitive measures to force Michael Saslow to comply with his directives, that he knowingly encouraged claims against the estate of the person he was protecting, that he knowingly took actions that created unnecessary proceedings and costs, and that he knowingly interfered with the efficient resolution of Carol Saslow's estate. We understand the foregoing findings to relate to the accused's violations of RPC 4.4(a) and RPC 8.4(a)(1). The trial panel made no finding of mental state respecting the accused's violations of RPC 1.5(a).
"Intent" is the conscious objective or purpose to accomplish a particular result. ABA Standards at 7. "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. Id .
There may be some question whether the accused acted knowingly or intentionally when he billed the conservatorship estate for work that did not benefit Carol Saslow. As we have noted, the accused insists that he believed (if erroneously) that he engaged in that work to benefit Carol Saslow and the conservatorship estate. But, in other respects, there can be no question but that the accused acted intentionally. For example, he deliberately increased his hourly rate for fiduciary work as a method of punishing Michael Saslow; by his own explanation, he increased the rate as a "leverage technique."
*857 He further acted intentionally when he sent letters to the creditors of the Carol **695 Saslow's conservatorship estate to harass or otherwise burden Michael Saslow. Finally, the accused acted knowingly when he engaged in conduct prejudicial to the administration of justice.
Respecting the injury sustained, this court has stated that it may consider actual as well as potential injuries resulting from the misconduct. Paulson , 341 Or. at 31, 136 P.3d 1087. The accused caused potential financial harm to Michael Saslow by charging excessive fees. He caused actual financial and emotional harm to Saslow by sending letters to family, friends, and creditors of the Saslows that harassed and otherwise burdened Saslow. And the accused caused actual harm to the administration of justice by causing court resources to be consumed in dealing with the accused's aggressive tactics. In the absence of aggravating or mitigating circumstances, the appropriate sanction for the accused's misconduct is a suspension. ABA Standard 5.22; 6.22; 7.2.
In this proceeding, five aggravating circumstances apply. First, the accused has a prior record of discipline, having been reprimanded by the Bar in 1998 and 2004.[7] ABA Standard 9.22(a).
Second, the accused committed multiple offenses. ABA Standard 9.22(d). The accused violated three different disciplinary rules, and we have found that he violated those rules in multiple ways.
Third, the accused has refused to acknowledge the wrongful nature of his conduct. ABA Standard 9.22(g). As this court has stated, accused lawyers have the right to defend themselves vigorously against all charges. In re Davenport , 334 Or. 298, 321, 49 P.3d 91 (2002). That is, an accused lawyer may refuse to concede the Bar's factual **696 allegations without reprisal for doing so. Id . In this case, however, in nearly all material respects, the accused has acknowledged the factual accuracy of the Bar's allegations supporting the charged violations. Nonetheless, he claimed, and continues to claim, that his conduct was not blameworthy. In addition, the accused does not acknowledge that his conduct was detrimental in any respect. Under those circumstances, the accused has failed to acknowledge the wrongful nature of his conduct. In re Strickland , 339 Or. 595, 605 n.9, 124 P.3d 1225 (2005) (finding existence of aggravating factor in similar circumstances).
Fourth, Michael Saslow was a "vulnerable victim." ABA Standard 9.22(h). We observe that there was evidence in the record that Saslow was difficult to get along with and was sometimes reluctant to comply with even the accused's reasonable demands for cooperation. Nevertheless, Saslow was in a vulnerable position due to his age and the facts that his wife of over 50 years had become incapacitated and that responsibilities for which he was unready were then thrust upon him.
Fifth and finally, the accused has substantial experience in the practice of law, having practiced law for over 30 years. ABA Standard 9.22(i).
We reject the trial panel's finding that the accused engaged in a "pattern of misconduct" as that phrase is used in ABA Standard 9.22(c). As this court has stated, a pattern of misconduct generally is not established as an aggravating factor from a single course of conduct, even a lengthy one. In re Walton , 352 Or. 548, 559-60, 287 P.3d 1098 (2012). Rather, that factor generally is applicable only in cases in which the lawyer has violated the disciplinary rules in more than one case or matter. Id . In this case, the accused's misconduct arose out of a single course of conduct in a single matter. Accordingly, we find that the Bar has not proved *858 that aggravating factor by clear and convincing evidence.[8] **697 No mitigating factors apply in this proceeding. In light of the fact that the presumptive sanction is a suspension, the existence of multiple aggravating factors and the absence of mitigating factors leads us to conclude that a lengthy period of suspension is appropriate.
We turn, then, to this court's case law. We have found no case that is precisely on point. The following cases, however, are instructive.
In Paulson , this court found that the accused lawyer engaged in conduct prejudicial to the administration of justice in two matters and suspended the lawyer for six months. 341 Or. at 34, 136 P.3d 1087.
In Stauffer , the accused lawyer pursued a former client in probate and bankruptcy court in an attempt to collect unpaid attorney fees. This court found that that conduct was prejudicial to the administration of justice. The court also found that the accused lawyer was guilty of charging an excessive fee, knowingly advancing a frivolous claim, and representing clients in matters in which he had conflicts of interest. The court explained that "the enormity and duration of the accused's overreaching in the case, the accused's blatant misrepresentations to the probate and bankruptcy courts, and the numerous aggravating factors" justified a two-year suspension from the practice of law. 327 Or. at 70, 956 P.2d 967.
In In re Rhodes , 331 Or. 231, 13 P.3d 512 (2000), the disciplinary charges arose out of the accused lawyer's refusal to allow his wife to prevail in a domestic relations matter. The accused lawyer was found to be in contempt of court for refusing to produce documents to his wife and again for failing to make court-ordered child support payments. This court found that that conduct violated the rule prohibiting lawyers from disregarding a court order and that it was prejudicial to the administration of justice. In addition, the court found the accused lawyer guilty of failing to respond truthfully to Bar inquiries. The court held that the nature of the violations, the harm suffered by the accused lawyer's family, and the existence of multiple aggravating factors justified a two-year suspension from the practice of law. Id . at 239, 13 P.3d 512.
**698 Finally, in In re Skagen , 342 Or. 183, 221, 149 P.3d 1171 (2006), the court suspended the accused lawyer for one year for his negligence in handling trust accounts and keeping records of client property in two matters, for failing to respond to Bar inquiries, and for engaging in conduct prejudicial to the administration of justice during the Bar disciplinary proceeding.
The accused's conduct in this case is less egregious than that of the accused lawyers in Stauffer and Rhodes , but involved more, and more serious, charges than that of the accused lawyers in Paulson or Skagen . As this court has said, case matching is not an exact science. Stauffer , 327 Or. at 70, 956 P.2d 967. On balance, and considering the existence of multiple aggravating factors and the absence of mitigating factors, we conclude that an 18-month suspension from the practice of law is the appropriate sanction in this case.
The accused is suspended from the practice of law for a period of 18 months, commencing 60 days from the effective date of this decision.

RPC 1.5(a) provides:
"A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee or a clearly excessive amount for expenses."

RPC 3.1 provides:
"In representing a client or the lawyer's own interests, a lawyer shall not knowingly bring or defend a proceeding, assert a position therein, delay a trial or take other action on behalf of a client, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law[.]"

RPC 4.4(a) provides:
"In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person."

RPC 8.4(a)(4) provides:
"(a) It is professional misconduct for a lawyer to:
"* * * * *
"(4) engage in conduct that is prejudicial to the administration of justice[.]"

The trial panel also ordered, as an "additional sanction," that the accused undergo formal reinstatement under BR 8.1, stating that the accused's "continuing failure to consider his own conduct as detrimental to the personal relationships involved and to the prompt, economical and correct resolution of his legal and fiduciary responsibilities calls for a full examination of his record and a showing he is not likely to find himself in another such case and engage in similar behavior." The trial panel's order of formal reinstatement is unnecessary. Under BR 8.1, formal reinstatement is required in any case in which an accused lawyer has been suspended for more than six months.

Although we concluded above that the accused violated RPC 1.5(a) in charging the estate of Carol Saslow for time spent seeking to have criminal charges brought against Michael Saslow and attempting to establish a conservatorship over Michael Saslow, it does not follow that the conduct also violated RPC 3.1. The relevant question under RPC 1.5(a) is whether the fees charged were reasonable in light of the accused's obligations to Carol Saslow and the conservatorship estate. The relevant question under RPC 3.1 is different; it concerns only whether the accused had a plausible legal basis for asserting a legal position.

In 1998, the accused was reprimanded for violating former DR 1-102(A)(3) (current RPC 8.4(a)(3) ; conduct involving fraud, dishonesty, deceit, or misrepresentation), when he engaged in a ruse to deceive opposing counsel after one of his clients in a civil matter died. Additionally, in 2004, the accused was reprimanded for violating former DR 1-102(A)(4) (current RPC 8.4(a)(4) ; conduct prejudicial to the administration of justice) and former DR 6-101(B) (current RPC 1.3 ; neglect of a legal matter), when he neglected six separate conservatorship matters to such an extent that it caused harm to the administration of justice.

The Bar urges us to find the existence of two additional aggravating factors, which the trial panel rejected: the existence of a dishonest or selfish motive, ABA Standard 9.22(b); and indifference to making restitution, ABA Standard 9.22(j). The trial panel found that those aggravating factors were not supported by evidence in the record. On de novo review, we agree.