Argued and submitted November 1, accused suspended from practice of law for six months, commencing 60 days from effective date of decision December 29, 2006

In re Complaint as to the Conduct of

LINDA J. WILSON,
*Accused.*

(OSB 04-155, 04-157; SC S53377)

149 P3d 1200

John Halpern, Jr., Eugene, argued the cause and filed the brief for the accused.

Stacey J. Hankin, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.*

PER CURIAM

---

* Walters, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged Linda J. Wilson (the accused) with violating two disciplinary rules of the Code of Professional Responsibility: Disciplinary Rule (DR) 1-102(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1-102(A)(4) (engaging in conduct prejudicial to administration of justice).[1] A trial panel of the Disciplinary Board found that the accused had committed the charged violations and recommended that the accused be suspended from the practice of law for six months.

The accused seeks review in this court. ORS 9.536(1); Bar Rule of Procedure (BR) 10.1. This court reviews the record *de novo*. ORS 9.536(3) and BR 10.6. The Bar has the burden of establishing the alleged misconduct by clear and convincing evidence. BR 5.2. For the reasons that follow, we conclude that the accused violated DR 1-102(A)(3) and DR 1-102(A)(4) and that a six-month suspension is the appropriate sanction.

On December 12, 2003, the accused became the lawyer of record for the respondent in a domestic relations matter. Haines represented the petitioner in that matter. At that time, the case was set for trial on December 17, 2003. The day before the trial was set to begin, the court granted Haines's motion to postpone the trial date to January 8, 2004.

On January 5, 2004, the accused and Haines both were in court on separate matters. At that time, the accused informed Haines that she had a trial and an arbitration hearing set for January 8, 2004, and that she, therefore, would have to postpone the trial of the domestic relations matter. Haines told the accused that she would not agree to the postponement. Nevertheless, later that day, the accused filed a motion to postpone the trial in the domestic relations matter. In her supporting affidavit, the accused stated that a postponement was necessary because, on the scheduled trial

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. The conduct at issue in this proceeding occurred before that date, and we therefore apply the Oregon Code of Professional Responsibility.

date, she also was required to arbitrate a matter in Douglas County and participate in a settlement conference in Linn County. The presiding judge denied the accused's motion shortly after it was filed and directed her judicial assistant to inform the parties of that ruling.

On January 7, 2004, the accused's husband and law partner, Daum, informed the judge's judicial assistant that the accused had the flu and needed to postpone the trial. After speaking with the judge, the assistant telephoned Haines and discovered that Haines opposed any postponement because she intended to present the testimony of an expert witness and a delay in the trial would result in significant expense. After learning of Haines's objection, the judge directed the assistant to telephone the accused and request a doctor's note regarding her alleged ailment.

Later that afternoon, Daum telephoned Haines and stated that the accused had the flu and would not appear at the trial on the following day. Haines then telephoned the judge's judicial assistant, who informed her of the judge's request that the accused produce a doctor's note. Shortly thereafter, the judge was scheduled to be in court and informed the assistant that she would rule on the motion to postpone when she returned. While the judge was in court, the assistant informed Haines that the accused had yet to produce a note from a doctor and that the judge had yet to rule on the accused's motion to postpone. Moments later, the accused telephoned Haines and told her that the trial had been postponed. Haines asked the accused whether she had spoken to the judge's assistant and done everything that needed to be done. The accused assured Haines that she had.

After speaking with Haines, the accused then telephoned the judge's judicial assistant and told her that Haines had withdrawn her objection to the postponement. Because the judge was still on the bench at that time, the assistant told the accused that she would relay that information to the judge and that the judge would make her ruling later that day. At no point during that conversation did the judge's assistant indicate to the accused that the trial was postponed. Shortly after concluding that conversation, the judge's assistant received a telephone call from Haines. Haines told

her that the accused had stated that the case had been postponed. The assistant corrected Haines and informed her that the judge had yet to make her ruling on the accused's motion to postpone.

Shortly after 4:00 p.m., on the same day, the judge returned to her chambers, spoke with the assistant about the various conversations involving the accused and Haines, and denied the accused's motion to postpone. Telephone messages were left for both Haines and the accused stating that the motion for a postponement had been denied.

On January 8, 2004, shortly before 9:00 a.m., when the trial was scheduled to begin, Daum telephoned the court and said that the accused was ill and would submit proof to the court later that day. Haines appeared at court with her expert witness and discovered that neither the accused nor the accused's client was present. At that time, the judge placed Haines under oath and had her testify about the events that had occurred during the previous few days. Based upon both the information that she had received from the judicial assistant and Haines's testimony, the judge informed Haines that she would consider a request that the accused be required to pay attorney and expert fees incurred by Haines in preparation for trial.

On January 14, 2004, Haines submitted a motion for attorney fees. On January 20, 2004, the accused signed an affidavit in response to Haines's motion. In that affidavit, the accused swore that, on January 5, 2004, she had told Haines that she was not feeling well and would have to postpone the January 8, 2004, trial date unless she felt better. The accused also swore that Haines had had no objection to the postponement at the time, but only objected to it later in the day.[2] Ultimately, the judge issued an order awarding Haines $1,750 in attorney fees and $600 in costs. That order provided that the sanctions be entered against the accused personally and not against her client.

---

[2] According to the Bar, the accused was aware that those statements were false when she provided them.

The Bar's formal complaint against the accused alleged that the accused's conduct had violated DR 1-102(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1-102(A)(4) (engaging in conduct prejudicial to administration of justice). Following a hearing, the trial panel found that the accused had violated both DR 1-102(A)(3) and DR 1-102(A)(4) and recommended a six-month suspension.[3] As noted, the accused sought review in this court.

■ The accused raises three arguments. First, she contends that she was struggling with depression at the time of the domestic relations matter. In that regard, the accused challenges a trial panel ruling to the effect that, if the accused did not produce certain medical records (as the Bar had requested below), then she would be "prohibited from offering at trial any evidence or testimony regarding any medical or psychological condition, either in defense of the Bar's allegations or in mitigation of any sanction that may be imposed upon the Accused as a result of her conduct."

Second, the accused argues that "almost all of the testimony in this case consisted of differing interpretations of the meanings of words and fine shadings of the meanings of words." As support for that contention, the accused provides the following example:

"[A]lthough it would be said that 'the court' informed the Accused of some fact, it was revealed during trial that the

---

[3] Specifically, the trial panel found by clear and convincing evidence:

"(1) That on January 7, 2004, the accused represented to counsel for the adverse party in the [domestic relations] case that the court had granted her oral motion to postpone, which representation was false, and the Accused knew the representation was false when she made the statement.

"(2) That on January 7, 2004, the accused represented to the court that [Haines] no longer objected to a postponement of the January 8, 2004 trial date, knowing this representation was false when made.

"(3) When the court informed the Accused that it had not yet ruled on her motion to postpone, the accused failed to inform [Haines] that her prior representation that the court had granted her motion to postpone was incorrect.

"(4) That in an affidavit filed with the court on January 20, 2004, the Accused represented she told [Haines] on January 5, 2004, that she was not feeling well and would have to postpone the January 8, 2004, trial date unless she felt better. The Accused knew that representation was false when she made the statement in her affidavit."

words 'the court' meant some official working for the court and 'informed Ms. Wilson' meant delivered a message to somebody in some manner to be given to Ms. Wilson, without knowing whether or not she got the message."

According to the accused, the trial panel gave too much credence to the testimony of certain witnesses and not enough to other witnesses. For example, the accused suggests that "Haines was shown to be a hostile, biased witness against the accused, and her testimony should be taken in that light."

Finally, the accused also argues that, even if her conduct violated the disciplinary rules, the trial panel imposed an excessive sanction. The accused suggests that an appropriate sanction would be a 90-day suspension.

In response, the Bar argues that the trial panel correctly decided the issues concerning the accused's illness and medical records. The Bar contends that, "[t]o the extent the accused was putting her mental state at issue, the Bar was entitled to explore and test the accused's assertion. It could do so only by reviewing the accused's mental records." The Bar argues that, under those circumstances, "the trial panel chair was justified in ordering the accused to either produce those records by a date certain or forego introducing any evidence regarding her mental state." The Bar also argues that the accused failed to identify how the trial panel's discovery order denied her a fair hearing. Similarly, the Bar argues that, "[t]o the extent the trial panel rejected the accused's version of events and found her explanations not credible, the court should give substantial weight to those findings and conclusions."

In our view, the accused has not presented any cogent legal argument as to why she should have been permitted to place her mental state in issue at the trial panel proceeding but not permit the review of her medical or mental health records. In the absence of such an argument, we conclude that the trial panel ruled correctly that the accused's failure to produce her medical or mental health records provided a sufficient basis to bar her from introducing evidence regarding her medical condition or mental health.

■ After reviewing the record, we also conclude that the trial panel correctly assessed the testimony before it and correctly determined that the accused had violated DR 1-102(A)(3) and (4).

■ In determining the appropriate sanction for violations of the disciplinary rules, this court first refers to the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (amended 1992) (ABA Standards). Using the ABA Standards, we make a preliminary determination of the appropriate sanction by considering the duty that the accused violated, the accused's mental state, and the injury that the accused's misconduct caused. ABA Standard 3.0. We then consider the existence of any aggravating or mitigating circumstances that may justify either an increase or a reduction in the degree of sanction to be imposed. ABA Standards 9.2, 9.3. Finally, we evaluate the appropriate sanction in light of this court's case law. *See In re Eadie*, 333 Or 42, 64-65, 36 P3d 468 (2001) (describing methodology).

In this case, the accused violated her duty to the public, the legal system, and the profession when she made false statements in a court proceeding. The conduct that constituted those violations was done intentionally and caused actual injury to the court in that the trial was delayed and had to be rescheduled.

Taking into account the duty violated, the accused's mental state, and the actual and potential harm, we conclude that ABA Standard 6.12, which suggests that a suspension is appropriate, most closely fits the misconduct at issue.[4]

There are two aggravating factors present in this case. First, the accused has a prior disciplinary record. ABA Standard 9.22(a). In 1986, a trial panel found that the accused violated DR 2-110(A)(2) (withdrawing as counsel without taking reasonable precautions to avoid foreseeable prejudice), DR 7-104(A)(1) (communicating with a person the

---

[4] ABA Standard 6.12 provides:

"Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

lawyer knew to be represented by another lawyer), DR 9-102(A) (withdrawing funds from one client's trust account to be applied to a different client's representation), and DR 9-102(B)(4) (applying money held in trust for the benefit of the client to attorney fees without the authority to do so). *In re Wilson*, 1 DB Rptr 225 (1986). Second, the accused has substantial experience in the practice of law.

The Bar concedes that a mitigating factor also is present, in that the accused demonstrated a cooperative attitude toward the proceeding. ABA Standard 9.32(e).[5]

We turn to a consideration of this court's case law. Although there is no case law that is precisely on point, there are several cases that offer guidance. In previous lawyer disciplinary cases involving dishonesty and misrepresentation, this court has ordered sanctions ranging from six-month suspensions to disbarment.[6] *See In re Starr*, 324 Or 283, 924 P2d 308 (1996) (two-year suspension for knowingly making false statements in petition for restraining order); *In re Benson*, 317 Or 164, 854 P2d 466 (1993) (six-month suspension for assisting client in preparation of fraudulent documents); *In re Hawkins*, 305 Or 319, 751 P2d 780 (1988) (disbarment for filing false affidavit and using false evidence); *In re Brown*, 298 Or 285, 692 P2d 107 (1984) (two-year suspension for preparation of false affidavit).

In this case, the accused cooperated with the Bar in the underlying proceedings, and her prior offenses occurred almost two decades ago. Furthermore, although her dishonesty with the court—which included making false statements to opposing counsel and court staff, and also filing an affidavit containing false statements—constituted an egregious violation, it does not rise to the level of the misconduct found

---

[5] We note that the accused's prior offenses are remote in time. ABA Standard 9.32(m). The Bar offers that the remoteness in time of the accused's 1986 misconduct also may serve as a mitigating factor under ABA Standard 9.32(m). In Oregon, however, remoteness in time does not serve as a mitigating factor, although it can serve to lessen the significance of the prior misconduct in aggravation. *See In re Dugger*, 334 Or 602, 609-10, 54 P3d 595 (2002) (so explaining).

[6] We do not separately address any cases involving conduct prejudicial to the administration of justice. In our view, the sanction associated with the accused's dishonesty and misrepresentation in this case takes into account the accused's conduct that harmed the administration of justice.

in the more severe lawyer disciplinary cases described above. As a result, we conclude that the trial panel's six-month suspension was the appropriate sanction in this case.

The accused is suspended from the practice of law for six months, commencing 60 days from the effective date of this decision.