Argued and submitted November 3; respondent is suspended from the practice
of law for one year, effective 60 days from the date of this decision
December 30, 2021

In re Complaint as to the Conduct of

MARLIN ARD,
OSB No. 931453,
*Respondent.*

(OSB 19-93) (SC S068497)

501 P3d 1036

The Oregon State Bar (Bar) alleged that respondent violated Rule of Professional Conduct (RPC) 8.4(a)(4), which prohibits conduct prejudicial to the administration of justice, by making false certifications in a court filing, initiating unwarranted proceedings, and acting improperly in other respects during litigation. A trial panel of the Disciplinary Board agreed and imposed a one-year suspension, and respondent sought review. *Held*: (1) The Bar sufficiently alleged that respondent had made false certifications in a court filing, although it did not sufficiently allege other misconduct; (2) the Bar proved by clear and convincing evidence that respondent violated RPC 8.4(a)(4), when he made two false certifications in a court filing, filed a judicial fitness complaint against a judge who had ruled against him, and also filed a federal action against that same judge, alleging judicial misconduct and bias; and (3) a one-year suspension is the appropriate sanction.

Respondent is suspended from the practice of law for one year, effective 60 days from the date of this decision.

En Banc

On review of the decision of a trial panel of the Disciplinary Board.

Marlin D. Ard, Sisters, argued the cause and filed the brief *pro se*.

Rebecca M. Salwin, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

Respondent is suspended from the practice of law for one year, effective 60 days from the date of this decision.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that respondent engaged in a single violation of Rule of Professional Conduct (RPC) 8.4(a)(4), which prohibits conduct prejudicial to the administration of justice, by making false certifications in a court filing, initiating unwarranted proceedings, and acting improperly in other respects during litigation. A trial panel of the Disciplinary Board agreed with the Bar and imposed a one-year suspension. In seeking review under ORS 9.536(1) and Bar Rule of Procedure (BR) 10.1, respondent asserts that the Bar's complaint was deficient and should be dismissed and that, in any event, the Bar did not prove the alleged violation. We conclude that the Bar sufficiently alleged a violation of RPC 8.4(a)(4), that respondent violated that rule of professional conduct, and that a one-year suspension is the appropriate sanction.

## I.   FACTS AND PROCEDURAL BACKGROUND

Respondent is a lawyer in Sisters. He was admitted to the California Bar in 1976 and the Oregon Bar in 1993, but he no longer has a regular law practice. His Oregon license has been in "active *pro bono*" status since 2012. With that status, he is exempt from the requirement to carry malpractice coverage through the Professional Liability Fund (PLF),[1] and he may represent clients only through a certified *pro bono* program that provides coverage. The underlying facts, set out below, arose from respondent's *pro bono* representation of a high school coach, whose contract had not been renewed, in two state court actions against several parents and the school district, a federal action against a Deschutes County Circuit Court judge and others, and a related judicial fitness complaint against the judge.

### A.   *The 2012 and 2014 State Court Actions*

Respondent's client, Goertzen, had been a successful girls' soccer coach at Sisters High School, but some parents were concerned about his coaching style and thought

---

[1] The PLF is a lawyers' liability insurance fund that the Bar has established under ORS 9.080(2) and ORS 9.191(3).

that his contract should not be renewed. After the school circulated a survey to parents and players, intended to assess Goertzen's job performance, the school district decided not to renew his contract.

In 2012, Goertzen—then represented by a different lawyer—sued the school district and three parents (the Stewarts and Young) in Deschutes County Circuit Court ("2012 action"). That court dismissed Goertzen's claims against the parents under Oregon's anti-SLAPP statutes and issued a limited judgment that awarded them almost $24,000 in statutory attorney fees and costs.[2] In seeking that result, the Stewarts each filed a declaration in which they denied having any involvement in the decision not to renew Goertzen's contract or having ever asked school or district officials to terminate Goertzen or not to renew his contract. Goertzen's lawyer appealed the judgment of dismissal and attorney fee award in spring 2013, and the Court of Appeals affirmed without opinion about a year later. Respondent began representing Goertzen while the appeal was pending, but he did not appear as counsel for Goertzen in the appeal.

Rather, in January 2014, respondent filed a new action in Deschutes County Circuit Court on Goertzen's behalf against the school district and two other parents, a married couple, Moore and Corrigan ("2014 action"). He raised claims that one of the defense lawyers characterized as "virtually identical" to those at issue in the 2012 action. At that time, respondent had not yet received a referral from a certified *pro bono* program; he later obtained one from Legal Aid Services of Oregon (LASO).

In defense, Moore and Corrigan relied on the anti-SLAPP statutes, filing identical declarations in which they each expressly denied creating the survey; having been

---

[2] A defendant in certain tort actions may file a special motion to strike under ORS 31.150(1) that, if granted, removes the defendant from the case on the ground that the alleged tortious conduct constituted protected speech in connection with a public issue or an issue of public interest. *See Neumann v. Liles*, 358 Or 706, 723, 369 P3d 1117 (2016) (explaining Oregon's anti-SLAPP statutory scheme (Strategic Lawsuit Against Public Participation) and describing its expedited procedure). Subsection (3) of that statute requires that a successful defendant be awarded reasonable attorney fees and costs.

consulted about the creation, adoption, or use of a survey; suggesting that a survey or any other evaluation tool be used; or having any understanding as to when or where the survey was created or adopted, or how it originated. In August 2014, the trial court issued a limited judgment that dismissed those parents from the 2014 action—on the same grounds as in the 2012 ruling—and ordered Goertzen to pay them more than $24,000 in statutory attorney fees and costs. Goertzen did not appeal.

Meanwhile, through discovery in Goertzen's ongoing claims against the school district, respondent discovered information that he thought called into question the veracity of all the declarations described above, in both the 2012 and 2014 actions. That information included two emails. The first was an email from Moore to the principal, Hosang, encouraging him to circulate a survey about Goertzen more broadly, so as to obtain fair and complete results; endorsing the notion of the survey to collect input about coaches; and noting her impression that the survey would determine the future of the coach position. The second was an email from Hosang to the school district's superintendent, stating that the survey had "come from" Ms. Stewart and that the "soccer folks" had "push[ed] for" the survey; referring to "accusations" of unstated origin that Ms. Stewart and Moore had "manipulated" other parents; and acknowledging that the survey had been a "huge contributing factor" in his decision to not extend Goertzen's contract. Respondent also learned that Moore had requested a meeting with Hosang, and, after reviewing completed anonymous surveys, he identified several statements that he attributed to various parent-defendants.

As a result, respondent notified the lawyer for the parents in the 2014 action, Rodrigues, that he intended to seek to vacate the earlier limited judgment because he had discovered new information, describing the information just summarized. Respondent further asserted that the parents had engaged in fraud and misrepresentation in obtaining the judgment. Rodrigues responded that respondent's "evidence" fell far short of the standard necessary to vacate the judgment and that, should respondent pursue additional litigation without any legitimate legal or factual basis,

Rodrigues's clients—Moore and Corrigan—would seek all available remedies.

In August 2015, respondent then filed three motions—two in the 2012 action and one in the 2014 action—to vacate the limited judgments previously entered in favor of all the parents. Respondent's motions claimed that the limited judgments had been obtained by a "fraud upon the Court" and that Goertzen was entitled to relief. His motion in the 2014 action further claimed that Moore and Corrigan had engaged in fraud, misrepresentation, or other misconduct. *See generally* ORCP 71 B(1) (court may relieve party from judgment due to "newly discovered evidence" that could not with due diligence have been discovered in time to move for new trial; or due to fraud or misrepresentation); ORCP 71 C (court has inherent authority to set aside a judgment for "fraud upon the court"). In two of those motions—as to the 2014 action and the Stewarts in the 2012 action—respondent cited "newly discovered" evidence that included some anonymous survey responses that he attributed to parents in both actions, as well as the email from Hosang to the superintendent. In his motion in the 2014 action, he also relied on the email from Moore to Hosang.

In those motions to vacate, respondent mischaracterized the content of several parents' earlier declarations, and he surrounded discussion of his newly discovered evidence with additional recitations that extrapolated from that evidence and, in some instances, mischaracterized it.[3] In his motion in the 2014 case, respondent specifically claimed that both parents had not been truthful in their declarations. He asserted that Moore's declaration was demonstrably false in light of his new evidence; that Corrigan's was suspect because he had been married to Moore at the time and was a teacher at the school; and that, due to Corrigan's teaching status, both Moore and Corrigan had been in a fiduciary relationship with Goertzen, which they had violated.

---

[3] For example, respondent inaccurately asserted that his newly discovered evidence showed that Moore had "collaborat[ed]" in creating the survey and that Moore's declaration had denied any knowledge of the survey; and he inaccurately characterized his evidence as showing that the Stewarts had "used" the survey to tell school officials, "in clear terms," to fire Goertzen.

All the parents opposed respondent's motions, and the matters proceeded to hearings before different judges. All three motions were denied.

Following those rulings, Rodrigues sought attorney fees and costs on behalf of his clients in the 2014 action, as well as sanctions against respondent under ORCP 17 D, arguing that he had made false certifications in his motion to vacate. *See* ORCP 17 C (lawyer is deemed to make certain certifications when filing signed documents, including that the filing is not for an improper purpose, that the claims and legal positions are warranted by existing law, and that any allegation or factual assertion is supported by evidence). In his motion for fees and sanctions, Rodrigues identified many assertions that respondent had made in his motion to vacate that were not supported by any "new evidence," and, in a later filing, he cited earlier judicial decisions determining that the underlying claims against the parents were "without merit."

In April 2016, Judge Bagley of the Deschutes County Circuit Court granted Rodrigues's motion and imposed sanctions in the 2014 action against respondent personally, for attorney fees and costs totaling more than $10,000. In a letter opinion, she specifically reasoned that, in his motion to vacate, respondent had falsely certified that his allegations of fraud, perjury, and false statements had been supported by evidence and warranted by existing law; she also determined that respondent had falsely certified that he had not presented his motion for any improper purpose. Judge Bagley added that respondent had filed his motion "with wanton disregard for the verity and substance of the assertions made therein." Shortly after that ruling, respondent submitted a proposed form of judgment that incorrectly showed both Goertzen and respondent as judgment debtors. Judge Bagley eventually entered a new limited judgment and money award in the 2014 action in the parents' favor, against respondent only.

Representing Goertzen, respondent appealed the trial court's order in the 2012 action that had denied his motions to vacate, and, representing both Goertzen and himself, he also appealed the new limited judgment in the

2014 action that had imposed sanctions against him personally. Both rulings were affirmed on appeal without opinion. By March 2018, the only outstanding appellate issue in both actions involved attorney fees and costs owed to the parents, including any newly incurred on appeal. The Court of Appeals referred that issue to the Appellate Settlement Conference Program for mediation. In the meantime, the PLF had become concerned about potential malpractice liability arising from respondent's continued representation of Goertzen, and so both the PLF and LASO's insurer, Hanover, became involved in the mediation.

Later in 2018, the issue of attorney fees and costs was settled at a mediation that involved the following participants: respondent and Goertzen, all the parents, LASO and Hanover, and the PLF. The mediation resulted in execution of a settlement agreement under which (1) the parents agreed to accept $120,000 paid by the PLF and Hanover (which, for at least some of the parents, amounted to about one-half of the amounts personally spent in the actions),[4] to withdraw all pending fee petitions, and to file satisfactions of judgment; (2) respondent and Goertzen agreed not to pursue any new action against the parents arising out of the same facts or seek review of the Court of Appeals decisions; (3) Goertzen released respondent, the PLF, LASO, and Hanover from any claim relating to respondent's work; and (4) the PLF and Hanover mutually released all claims against each other. The agreement also contained a clause stating that it represented "a full and final settlement of all claims, rights and damages which the parties hereto now have or may have against each other." On the signature page, the PLF was identified as the "Oregon State Bar Professional Liability Fund."

Although the Court of Appeals repeatedly resolved all issues on the merits in the appeals in the parents' favor, respondent characterizes the settlement as affirming the soundness of his conduct. According to respondent, the

---

[4] From the $120,000 award, different amounts were allocated to different groups of parents. As noted earlier, the 2012 action already was pending on appeal when respondent began representing Goertzen, so those parents had incurred a portion of their attorney fees and costs before respondent became involved in the action.

settlement (1) "eliminat[ed] and prevent[ed] any enforcement of over $200,000 in unlawful judgments wrongfully entered" against Goertzen, with neither respondent nor Goertzen incurring personal financial responsibility, and (2) reflected that the PLF and LASO had recognized that he had been "fully justified" in continuing litigation.[5]

B.  *The 2019 Proceedings Initiated Against Judge Bagley*

Meanwhile, respondent remained dissatisfied with Judge Bagley's rulings, and he initiated two proceedings against her, claiming judicial misconduct and bias arising from the following alleged facts: (1) she was friends with Moore and (2) she had directed Rodrigues, in an *ex parte* conversation, to move for sanctions against respondent in the 2014 action. In early 2019, respondent filed a judicial fitness complaint about Judge Bagley with the Commission on Judicial Fitness and Disability (commission), which, after considering a response from Judge Bagley, summarily dismissed that complaint.

Also, in February 2019, respondent filed a civil rights action in federal court on Goertzen's behalf, alleging judicial misconduct and bias against Judge Bagley, the Deschutes County Circuit Court, and Deschutes County. In that complaint—which sought $1.25 million in damages from each defendant—respondent alleged the two facts noted above involving Bagley, Moore, and Rodrigues. As to Moore, respondent relied on LinkedIn social media webpages that he claimed supported his allegation that Judge Bagley and Moore knew each other, were friends, and had exchanged email addresses and communicated on social media. After Judge Bagley's counsel unsuccessfully attempted to persuade respondent to dismiss, citing judicial immunity principles, Judge Bagley moved for dismissal, which generated additional responsive filings. Eventually, after working with his own counsel (apparently referred to him by the PLF), respondent and the defendants stipulated to a dismissal with prejudice. When respondent filed the

_____

[5] As for Goertzen's litigation against the school district, his claims in the 2012 action were dismissed, as were most of his claims in the 2014 action, following a summary judgment ruling in the district's favor (affirmed on appeal). The parties also settled two claims in the 2014 action.

2019 action against Judge Bagley, he did not have a referral from a certified *pro bono* program, although he did obtain one—from the federal court's own program—two months later, before the dismissal.

## C. *Initiation of Disciplinary Proceedings, Bar Complaint, and Trial Panel Hearing*

The Bar filed a formal complaint in February 2020 and an amended complaint in August 2020. The Bar's amended complaint alleged a single violation of RPC 8.4(a)(4) (conduct prejudicial to the administration of justice), arising from various facts described above, including respondent making false certifications in his motion to vacate the 2014 action; initiating the two proceedings against Judge Bagley; and representing Goertzen without a *pro bono* referral.

The disciplinary matter proceeded to a hearing before a trial panel. After hearing from respondent and multiple witnesses, the panel concluded that the Bar had proved its alleged violation of RPC 8.4(a)(4) by clear and convincing evidence, based on multiple instances of misconduct.[6] Although the Bar had requested only a 60-day to 90-day suspension, with formal reinstatement, the panel ordered a one-year suspension, emphasizing what it characterized as respondent's "five-year saga of frivolous and destructive litigation" against the parents; his refusal to acknowledge the wrongfulness of his conduct; and his "ends-justify-any-means attitude towards his obligations as an attorney[.]"

## II.   PRELIMINARY MATTERS

We begin by addressing three challenges that respondent has raised to various aspects of this lawyer disciplinary proceeding. None are well taken.

## A. *Implications of Earlier Settlement Agreement*

Respondent's first challenge is based on the settlement agreement that resolved the 2012 and 2014 actions

---

[6] As we later discuss in more detail, the trial panel based its conclusion that respondent had violated RPC 8.4(a)(4) on several grounds with which we agree, as well as additional grounds that we do not consider because the Bar did not sufficiently allege them in its complaint.

on appeal. Quoting from that agreement, respondent reasons that (1) all "parties" thereto—including the PLF—had agreed to "expressly waive and relinquish any and all rights" under any contrary law; (2) on the signature page, the PLF was identified as the "Oregon State Bar Professional Liability Fund"; and, therefore, (3) the agreement precluded the Bar from initiating any disciplinary proceeding against him. The trial panel rejected that argument for several reasons. Most notably, the panel observed that the PLF is a separate legal entity from the Bar and so the PLF's execution of the agreement—which included provisions barring future claims for damages—neither bound the Bar nor precluded the Bar from initiating this proceeding. We agree and reject respondent's argument for the same reason.

B.   *Facts Involving Bar's Disciplinary Counsel*

Respondent's second challenge is based on facts involving the Bar's Disciplinary Counsel at the time of the Bar's investigation, Evans. Respondent raises two different issues, one an evidentiary issue and the other a discovery issue.

The evidentiary issue involving Evans concerns a draft stipulation for discipline. Before the trial panel hearing, Evans had engaged respondent about executing a draft stipulation for discipline, but respondent never did so. *See generally* BR 3.6 (discipline by consent). Respondent argued below, and again argues on review, that the unexecuted draft stipulation amounted to an admission from Evans that he had not violated any ethical rule. The trial panel adjudicator refused respondent's request to consider the draft stipulation and granted a motion *in limine* from the Bar to exclude it from the evidence at the trial panel hearing. The adjudicator reasoned that the draft stipulation was similar to an offer of compromise in civil litigation, which is not admissible into evidence under OEC 408, so as to permit the full and free disclosure of information between parties to reach settlement, without prejudicing any position that might later be taken. Although the Oregon Evidence Code does not apply to Bar disciplinary proceedings, *In re Barber*, 322 Or 194, 206, 904 P2d 620 (1995), provisions of the code can be instructive depending on the circumstances. We

agree with the adjudicator's reasoning and do not consider the stipulation on review.

The discovery issue involving Evans concerns a pre-hearing attempt by respondent to depose her. Respondent had issued a subpoena to Evans, who by then had retired from the Bar and moved out of state. On motion from the Bar, the adjudicator quashed the subpoena, reasoning in part that respondent had provided no legitimate grounds for seeking discovery from Evans.[7] Respondent challenges that ruling and argues that his inability to depose Evans—and the Bar's and the adjudicator's "deliberate[] and intentional[] shield[ing]" of her, such that she would not be "required to explain her conduct, investigation[,] and *** findings"—violated his due process rights.

The crux of respondent's complaint is that, because Evans was the official responsible for the Bar's investigation, she was a critical witness whom he should have been permitted to depose. We agree with the trial panel, however, that nothing about the Bar's allegations against respondent concerned Evans's investigation—rather, the allegations concerned facts that occurred in the course of the 2012 and 2014 actions and the two proceedings initiated against Judge Bagley. Stated another way, the percipient witnesses were those with direct knowledge of facts relating to those proceedings, not Evans. The adjudicator did not err in quashing the subpoena.

C.   *Sufficiency of False Certifications Allegation*

Third, respondent raises a procedural challenge to the sufficiency of one part of the Bar's complaint—specifically, to its allegation that he made false certifications when he filed his motion to vacate the limited judgment in the 2014 action. Respondent contends that the allegation was insufficiently specific as a matter of law and that the complaint against him therefore should be dismissed in its entirety. He filed a motion to dismiss in this court—which remains pending—based on that same reasoning.

---

[7] The adjudicator further reasoned that respondent had not followed available procedures to subpoena an out-of-state witness.

As to false certifications, the Bar alleged in paragraph 7 of its complaint that respondent had filed a motion to vacate the limited judgment entered in the 2014 action and that, in doing so, he falsely certified that (1) his allegations were supported by evidence; (2) his claims were warranted by existing law; and (3) his motion was not being presented for any improper purpose. And in paragraph 8, the Bar further alleged that the trial court had denied respondent's motion to vacate and, in April 2016, entered a letter opinion awarding fees and costs against him for his conduct.

Respondent contends that the Bar was required to set out the "*specific language* setting forth the alleged false certification." (Emphasis in original.) He relies on ORCP 17, which provides, in part, that, in raising a claim, filing a document, or making an argument, an attorney certifies that the allegations and claims are supported by both evidence and existing law and are not being presented for any improper purpose.[8] That rule, respondent continues, required the Bar to set out the "exact words" that constituted the alleged false certifications. We disagree that the Bar was required—under ORCP 17 or otherwise—to specifically describe the false certifications in the manner that respondent contends, such that its failure to do so requires dismissal.

---

[8] ORCP 17 C provides, in part:

"C(1) An attorney or party who signs, files or otherwise submits an argument in support of a pleading, motion or other document makes the certifications to the court identified in subsections (2) to (5) of this section, and further certifies that the certifications are based on the person's reasonable knowledge, information and belief, formed after the making of such inquiry as is reasonable under the circumstances.

"C(2) A party or attorney certifies that the pleading, motion or other document is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"C(3) An attorney certifies that the claims, defenses, and other legal positions taken in the pleading, motion or other document are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law.

"C(4) A party or attorney certifies that the allegations and other factual assertions in the pleading, motion or other document are supported by evidence. Any allegation or other factual assertion that the party or attorney does not wish to certify to be supported by evidence must be specifically identified. The attorney or party certifies that the attorney or party reasonably believes that an allegation or other factual assertion so identified will be supported by evidence after further investigation and discovery."

As explained earlier, ORCP 17 C became an issue in the 2014 action because the parents had relied on that rule in seeking sanctions against respondent relating to his motion to vacate the limited judgment already entered in their favor. As the parties invoking ORCP 17 C, the parents bore the burden of identifying false certifications on respondent's part, which they addressed in detail in their motion for sanctions.

Significantly, in its complaint, the Bar did not allege that respondent had violated ORCP 17 C in a proceeding in which the Bar was a party; neither did it allege that he had made any false statement in violation of RPC 8.4(a)(3) (prohibiting conduct involving dishonesty, deceit, or misrepresentation that reflects adversely on fitness to practice). Rather, the Bar alleged that respondent had made false certifications in his motion to vacate in the 2014 action and that, in doing so, he had engaged in conduct that was prejudicial to the administration of justice under RPC 8.4(a)(4). Because the Bar—unlike Rodrigues in filing the motion for sanctions—was not seeking to prove any violation of ORCP 17 C, it bore no burden to specifically identify respondent's purported false certifications, in the manner that respondent contends.

Of course, the Bar is required to sufficiently allege facts in connection with any allegation, to permit the respondent lawyer "to know the nature of the charge." BR 4.1(c); *see also In re Ellis/Rosenblum*, 356 Or 691, 738-39, 344 P3d 425 (2015) (so explaining and setting out demonstrative cases and applicable due process principles). Standing alone, a bare allegation that respondent made false certifications arguably would be insufficient. But, the Bar's allegation in this case did not stand alone.

Instead, the Bar added important context in its complaint by also alleging that respondent had made the false certifications in filing his motion to vacate in the 2014 action and that the trial court had "entered a letter opinion awarding fees and costs against Respondent for his conduct." That letter opinion, which respondent possessed, specifically described respondent's claims of fraud, misrepresentation, and misconduct by the parents and his request

for relief based on "newly discovered evidence"; referred to the parties' arguments made at a hearing on the sanctions motion; and explained why Judge Bagley had determined that respondent's motion was not supported by evidence or existing law and that his motion had been intended "to continue what has been vexatious litigation that is ill-supported by facts or law," rather than being filed for a proper purpose. Those contextual references in the complaint put respondent on notice of the nature of the Bar's "false certifications" allegation. We therefore reject respondent's contention that the Bar insufficiently alleged the nature of his false certifications in the 2014 action, and we deny his motion to dismiss the Bar's complaint.

## III.   MISCONDUCT ANALYSIS

### A.   *Standards Relating to RPC 8.4(a)(4)*

RPC 8.4(a)(4) provides that "[i]t is professional misconduct for a lawyer to *** engage in conduct that is prejudicial to the administration of justice[.]" That rule required the Bar to establish three elements by clear and convincing evidence: (1) respondent's actions were improper; (2) his conduct occurred during the course of judicial proceedings; and (3) his conduct had, or could have had, a prejudicial effect upon the administration of justice. *In re McGraw*, 362 Or 667, 691, 414 P3d 841 (2018). The parties do not dispute that all the alleged misconduct occurred during judicial proceedings; thus, only the first and third elements of RPC 8.4(a)(4) are at issue.

As to the first element, "[improper] conduct" means doing something that a lawyer should not do (or, not applicable here, refraining from doing something that the lawyer should have done). *See In re Haws*, 310 Or 741, 746, 801 P2d 818 (1990) (so explaining, in context of *former* DR 1-102(A)(4)); *see also, e.g.*, *McGraw*, 362 Or at 693 (improper conduct included submitting abusive filings that required line-by-line review and sending letters that disparaged a judge's integrity and competence); *In re Paulson*, 341 Or 13, 29, 136 P3d 1087 (2006) (lawyer whose decisions continually placed his clients in more vulnerable legal and financial positions, and who ignored or violated procedural rules resulting in

more complicated, protracted, and expensive litigation, engaged in improper conduct). As to the third element, a prejudicial effect exists "when the lawyer's conduct harms (or has the potential to harm) either the substantive rights of a party to the proceeding or the procedural functioning of a case or hearing," or both. *In re Maurer*, 364 Or 190, 199, 431 P3d 410 (2018); *see also Haws*, 310 Or at 747 ("[i]n context, 'prejudice' means 'harm' or 'injury'"). Prejudice can be shown by several acts that cause some harm or by a single act that causes substantial harm. *McGraw*, 362 Or at 692. And prejudice can result from conduct that created unnecessary work for the court, had the potential to mislead the court, or had the potential to disrupt or improperly influence the decision-making process. *In re Lawrence*, 350 Or 480, 487, 256 P3d 1070 (2011).

This court previously has explained that RPC 8.4(a)(4) contains no express mental state requirement, *In re Carini*, 354 Or 47, 57, 308 P3d 197 (2013), and "focuses on the effect of the lawyer's conduct, not on the lawyer's intent," *id.* (quoting *In re Stauffer*, 327 Or 44, 59, 956 P2d 967 (1998) (concerning predecessor rule, *former* DR 1-102(A)(4))). In this case, as discussed below, the Bar proved that respondent acted negligently in some respects and knowingly in others, and we consider his state of mind primarily with respect to the sanction for improper conduct under RPC 8.4(a)(4).

The Bar is required to prove the misconduct alleged in its complaint by clear and convincing evidence. BR 5.2. Our review is *de novo*. BR 10.6.

## B.  *False Certifications*

We begin with the Bar's allegation that, when respondent filed his motion to vacate the limited judgment in the 2014 action, he made false certifications to the court. To recap, the Bar alleged that respondent had filed the motion to vacate in that action and that, in doing so, he falsely certified that his allegations were supported by evidence; his claims were warranted by existing law; and his motion was not being presented for any improper purpose. After reviewing the record, we conclude that (1) respondent made at least two false certifications in that motion to vacate; (2) his conduct was improper for purposes of RPC 8.4(a)(4); and

(3) his conduct had a prejudicial effect on the administration of justice.

On *de novo* review of the record, it appears that respondent was troubled by some of the information that he obtained during discovery, which in turn prompted him to draft and file his motions to vacate in both the 2012 and 2014 actions. Nonetheless, the record amply supports Judge Bagley's findings and conclusions in the 2014 action and the trial panel's findings and conclusions that, in filing his motion, respondent falsely certified that his new allegations and claims were supported by both fact and law.

By way of example, respondent stated in his motion to vacate that Moore had "collaborat[ed]" in creating the survey, when none of his "evidence" supported that assertion. He also characterized Moore's earlier declaration as denying any knowledge of the survey, when, instead, Moore had denied involvement in creating or having been consulted about its creation, adoption, or use.[9] And, notably, respondent offered no affirmative evidence whatsoever supporting his allegations against Corrigan: His lone allegation was that Corrigan had been married to Moore and worked at the school. At the trial panel hearing, respondent offered varying explanations for those aspects of his motion—such as, the essential crux of the parents' declarations had been that they each had denied any "knowledge" of the survey, but Moore clearly did know about it and Corrigan "absolutely" had to have known about Moore's related activity. But those protestations did not amount to supporting evidence, and respondent's evidence and other related material set out in his motion to vacate were riddled with inaccuracies. In short, we agree with the Bar that, when respondent filed his motion to vacate in the 2014 action, he falsely certified that his allegations were supported by evidence. And, in addition to those unsupported factual allegations, respondent's motion to vacate the limited judgment lacked legal support:

---

[9] The "evidence" on which respondent relied purportedly had showed that Moore asked the principal to circulate the survey more broadly and had expressed her impression that it would determine the coaching position. Even if true, that "evidence" did not contradict Moore's earlier statement denying involvement in creation of the survey or having been consulted about its creation, adoption, or use.

Even if respondent actually had evidence that Moore and Corrigan had known more about, or had been more involved with, the survey than previously claimed, that would not have justified vacating the limited judgment dismissing them from the 2014 action based on speech protected under the anti-SLAPP statutes.[10]

It is a closer question whether respondent also falsely certified that his motion to vacate the limited judgment in the 2014 action was not filed for any improper purpose. As noted, Judge Bagley concluded that respondent had filed his motion with the intent to continue vexatious litigation that was ill-supported by facts or law. The trial panel similarly concluded that respondent's motion lacked evidentiary support and that respondent had acted with an improper purpose. Certainly, the effect of respondent's motion was to extend ill-supported litigation, but respondent maintains that Goertzen should not have lost his coaching position and that his purpose in filing the motion was to carry out his duty to provide zealous representation to his client.

In the end, we need not determine whether respondent falsely certified that his motion in the 2014 action was not filed for any improper purpose. We already have determined that he made two other false certifications in that motion—that the allegations set out therein were supported in both fact and law—and that conduct was improper for purposes of RPC 8.4(a)(4). As established by ORCP 17 C, a lawyer such as respondent should not have engaged in that conduct. And, as explained, respondent's motion to vacate in turn required Rodrigues to file a motion for attorney fees and sanctions, taking time to explain in detail the many inaccuracies in respondent's motion to vacate; it potentially exposed Rodrigues's clients to civil liability and additional attorney fee expenses; and it required court time in processing both lawyers' motions and responsive filings, as well as in holding hearings, evaluating the merits, and issuing rulings. In short, respondent's improper conduct in seeking to

---

[10] Among other arguments, respondent asserted in his motion to vacate, incorrectly, that the new evidence was material because the parents were in a fiduciary relationship with Goertzen. As Judge Bagley concluded, the purported newly discovered evidence "did not bear on any viable, substantive claim or defense" in the 2014 action.

revive the claims against the parents, undertaken during a judicial proceeding, harmed "the procedural functioning" of the case, *Maurer*, 364 Or at 199, and potentially harmed the parents' substantive rights. It therefore amounted to conduct that was prejudicial to the administration of justice under RPC 8.4(a)(4).

C.  *Proceedings Initiated Against Judge Bagley*

Next, the Bar alleged that respondent had engaged in improper conduct when he filed both the judicial fitness complaint and the federal action against Judge Bagley. As explained, respondent had alleged judicial misconduct and bias based on factual assertions that Judge Bagley had been friends with Moore and had directed Rodrigues, in an *ex parte* conversation, to move for sanctions against respondent.

No evidence in the record supports either factual assertion, however. As to the claims about Moore, both Judge Bagley and Moore emphatically denied at the trial panel hearing that they knew each other or ever had communicated with each other, let alone ever were friends. And respondent's "evidence" to the contrary—a few LinkedIn webpages—did nothing to counter that testimony; to the contrary, additional testimony showed that, at most, the pages established that a person who had viewed Judge Bagley's public profile on LinkedIn also had viewed Moore's profile. As to the claims about Rodrigues, both Judge Bagley and Rodrigues denied that such a conversation had occurred, and, although respondent in part relied on Goertzen's memory of a discussion along those lines with Rodrigues while in Goertzen's presence, Goertzen ultimately could not recall any such discussion. In short, both proceedings lacked merit from the outset.

Once filed, respondent's judicial fitness complaint required the commission to send a follow-up inquiry to Judge Bagley; Judge Bagley to spend time responding; and the commission then to spend time deliberating about how to proceed. As noted, the commission summarily dismissed the complaint. As to the federal action, Judge Bagley's counsel attempted to persuade respondent to voluntarily dismiss

in light of applicable principles of judicial immunity, but he refused to do so. That prompted Judge Bagley's counsel to file a formal motion to dismiss and respondent to object—which required court time and resources to process, in addition to time and resources already expended to process respondent's ill-supported complaint and to issue a *pro bono* referral.

We have little difficulty concluding that, in initiating both the judicial fitness complaint and the federal action against Judge Bagley, respondent engaged in improper conduct during the course of a judicial proceeding that caused substantial harm to Judge Bagley, as well as to the commission and the federal court. Respondent's conduct was improper because he initiated both proceedings based on allegations of judicial misconduct and bias unsupported by any evidence. His conduct caused substantial potential and actual harm to Judge Bagley—in attacking her judicial integrity and disparaging her reputation—and also caused harm in requiring her to respond to respondent's unsupported allegations. It also substantially harmed the commission and the federal court, in terms of the time and resources required to process and act on respondent's unwarranted filings. In short, respondent's conduct in initiating the two proceedings against Judge Bagley violated RPC 8.4(a)(4).

D.   Pro Bono *Representation Without Certified Program Referral*

In its complaint, the Bar identified one instance in which respondent had represented Goertzen without a *pro bono* referral that, it alleged, violated RPC 8.4(a)(4): For two months in the 2019 federal action against Judge Bagley—the period between filing the complaint and his securing of a referral for his representation from a certified *pro bono* program (the federal court program)—respondent represented Goertzen without any referral.[11] At the trial panel hearing, other than confirming with

_____

[11] As recounted earlier, respondent also apparently filed the 2014 action on Goertzen's behalf before securing a referral from a certified *pro bono* program (in that case, LASO). The Bar did not make any misconduct allegation relating to that representation in its complaint, however.

respondent the facts just summarized, the Bar did not present any evidence about how his representation of Goertzen without a referral may have prejudiced the administration of justice, and, importantly, the Bar does not pursue that allegation on review. We therefore do not address it, although we observe that, without a proper referral from a *pro bono* program, respondent initiated an action without malpractice insurance and outside the scope of his license.

E.    *Submission of Erroneous Proposed Form of Judgment*

As noted, after Judge Bagley issued her letter opinion imposing sanctions on respondent in the 2014 action, respondent submitted a proposed form of judgment that incorrectly identified both respondent and Goertzen—rather than respondent alone—as judgment debtors. In its complaint, the Bar alleged that that submission had violated RPC 8.4(a)(4). On *de novo* review, however, we conclude that the Bar did not prove by clear and convincing evidence that respondent's submission of that form of judgment amounted to anything other than a drafting error—as opposed to improper conduct that prejudiced the administration of justice.

F.    *Other Conduct Relating to the 2012 and 2014 Actions*

Finally, the Bar highlights what it describes as additional misconduct by respondent in the 2012 and 2014 actions: moving to vacate the limited judgment in the 2012 action; appealing the resulting adverse ruling without reasonable grounds; and appealing Judge Bagley's order awarding sanctions in the 2014 action (again, purportedly without reasonable grounds). The Bar relatedly contends that respondent made false statements on appeal, and it suggests that the 2014 action itself was improper. We conclude that those instances were not sufficiently alleged as misconduct in the Bar's complaint.

As already explained, under BR 4.1(c), the Bar must allege sufficient facts in connection with its charged allegations to permit the respondent lawyer "to know the nature of the charge." *See* BR 4.1(c). As to the Bar's additional contentions, its complaint fell short of that standard. The complaint did allege relevant *historical* facts—describing that

(1) Goertzen had filed the 2012 action and had appealed the dismissal of the parents as defendants; (2) respondent had filed the 2014 action with a similar adverse result as in the 2012 action; (3) respondent had moved to vacate the limited judgment in the 2012 action and appealed that adverse ruling (which was affirmed without opinion); and (4) respondent had appealed Judge Bagley's ruling imposing sanctions (also affirmed without opinion). Then, in a later paragraph, the complaint alleged generally that all the foregoing "conduct" was improper, occurred during judicial proceedings, and caused harm or had the potential to cause harm to the administration of justice and opposing parties—*i.e.*, violated RPC 8.4(a)(4). That general allegation pertained, in part, to conduct undertaken by others, not respondent. And nowhere in its complaint did the Bar describe why or how any particular conduct on respondent's part in connection with the actions just described amounted to improper conduct that had, or could have had, a prejudicial effect on the administration of justice.

Therefore, those allegations can be read as presenting historical facts that provide context for the allegations of misconduct that the Bar clearly identified as violations of RPC 8.4(a)(4); at best, they are ambiguous as to whether the Bar was relying on them as violations of the rule. Because the Bar's complaint did not provide sufficient notice to respondent that any additional conduct, beyond what we already have addressed, was the basis for any RPC 8.4(a)(4) violation, we do not consider any of that conduct in our analysis of the alleged rule violation or the appropriate sanction.

In sum, on the merits of the Bar's complaint that respondent violated RPC 8.4(a)(4), we conclude that respondent engaged in the following instances of misconduct that prejudiced the administration of justice: making two false certifications in his motion to vacate the limited judgment entered in the 2014 action; filing the judicial fitness complaint against Judge Bagley; and filing the federal action against Judge Bagley, the Deschutes County Circuit Court, and Deschutes County. We therefore agree with the trial panel that the Bar proved its single alleged violation of RPC

8.4(a)(4) by clear and convincing evidence, and we turn to consider the appropriate sanction.

## IV.   SANCTION

In determining the appropriate sanction, we refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance. We first identify the duty violated, respondent's mental state, and the injury caused. We next assess the appropriate preliminary sanction and determine whether any aggravating or mitigating circumstance affects that preliminary assessment. Finally, we consider applicable case law. *See, e.g.*, *In re Conry*, 368 Or 349, 372, 491 P3d 42 (2021) (so explaining). Applying that methodology, we conclude that a one-year suspension is appropriate.

A.   *Duty Violated, Respondent's Mental State, and Harm*

We begin with the duty violated. By making false certifications in his motion to vacate the limited judgment entered in the 2014 action and initiating both proceedings against Judge Bagley, respondent violated his duty to avoid conduct prejudicial to the administration of justice—a duty owed to the legal system, the legal profession, and the public. *See In re Jaffee*, 331 Or 398, 409, 15 P3d 533 (2000) (conduct prejudicial to administration of justice violates duties to public and to legal system; public has a right to expect lawyers to live up to the highest standards of honesty and integrity); ABA Standard 6.1 (discussing conduct prejudicial to administration of justice); ABA Standard 6.2 (discussing duty to avoid abuse of legal process, including conduct involving failure to bring meritorious claims and violating court rules).

Turning to the mental states that may apply, the ABA Standards define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. And the ABA Standards define "negligence" as "the failure *** to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the

standard of care that a reasonable lawyer would exercise in the situation." *Id.*

Considering the judicial fitness complaint and the federal action that respondent initiated against Judge Bagley, we readily conclude that respondent acted "knowingly." His factual assertions of judicial misconduct and bias in both proceedings were not supported by any credible evidence.

As for the false certifications in respondent's motion to vacate filed in the 2014 action, respondent chose to take an exceptionally aggressive stance in his representation of Goertzen. After reviewing the record, we conclude that respondent acted at least negligently when he filed that motion: He failed to heed a substantial risk that the motion advanced unsupported allegations, thereby deviating from what a reasonable lawyer would have done. ABA Standards at 7.

As to injury, respondent's misconduct caused actual and potential injury to his client, the parents, Judge Bagley, the legal system, and the legal profession. *See* ABA Standards at 7 (defining "[i]njury" as harm to client, public, legal system, or profession as a result of misconduct, ranging from "serious" injury to "little or no" injury; defining "[p]otential injury" as harm that is reasonably foreseeable at the time of the misconduct and probably would have resulted if not for some intervening factor or event). In making false certifications in his motion to vacate, respondent caused potential injury to Goertzen by exposing him to potential liability for costs, fees, and sanctions. And, more significantly, he caused substantial actual harm to the parents, including causing them to unnecessarily incur additional attorney fees and to experience renewed stress and anxiety from respondent's attempt to revive litigation already wholly resolved in their favor; causing damage to their reputations and embarrassment resulting from unfounded accusations of fraud that were publicized in local and regional news media; and, potentially, exposing them to civil liability.

Respondent's misconduct also caused actual harm to Judge Bagley, in the form of time and effort to respond

to the judicial fitness complaint and the federal action, as well as impugning her professional reputation by raising unfounded bias accusations. And that same misconduct caused damage to the justice system, because respondent's unfounded filings and complaints required the commission and the federal court to expend time and resources to process filings, investigate a fitness complaint, issue a *pro bono* referral, and deliberate and issue resolutions.

Finally, respondent's misconduct caused substantial harm to the legal profession. In that regard, the parents testified that respondent's efforts to extend the litigation—through his unsupported and factually inaccurate motion to vacate—caused them to view the court system as flawed. In particular, they did not understand how the system was unable to stop what they perceived as respondent's "vendetta" against them and how he was permitted to use the judicial system as a weapon to pursue unfounded claims.

We conclude that the appropriate preliminary sanction is suspension, for two reasons. First, respondent knowingly engaged in misconduct when he initiated the two proceedings against Judge Bagley. *See* ABA Standard 6.22 (suspension generally appropriate when lawyer knowingly brings nonmeritorious claim or violates court rules and causes actual or potential injury to a party). Second, although we have concluded that the record falls short of establishing that respondent knowingly made false certifications, the significant harm that resulted from that conduct—particularly when coupled with respondent's misconduct in initiating proceedings against Judge Bagley—similarly warrants suspension. *See generally* ABA Standard 6.13 (reprimand generally appropriate when lawyer negligent in determining whether statements are false and causes actual or potential injury to party or adverse effect on legal proceeding); ABA Standard 6.12 (same conduct and harm, suspension appropriate when lawyer acts with knowledge); ABA Standard 6.11 (more egregious, intentional conduct, causing serious or potentially serious injury to a party "or significant or potentially significant adverse effect on the legal proceeding," justifies disbarment).

B.  *Aggravating and Mitigating Circumstances*

We turn to applicable aggravating circumstances. "[A]ggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21.

First, respondent has substantial experience in the practice of law. ABA Standard 9.22(i). He was admitted to the California Bar in 1976 and the Oregon Bar in 1993.

Second, respondent engaged in a pattern of misconduct—a pattern of relying on allegations unfounded in law and fact to support his litigation strategy. ABA Standard 9.22(c). Although this court previously has declined to apply the "pattern of misconduct" aggravating factor when a lawyer has not violated rules "in more than one case or matter" and the violation of RPC 8.4(a)(4) arose from a single course of conduct in a single matter, *McGraw*, 362 Or at 696, that aggravating factor applies in this case. Despite the single violation of RPC 8.4(a)(4) charged, respondent engaged in conduct prejudicial to the administration of justice in three separate proceedings—the 2014 action, the judicial fitness proceeding, and the federal action against Judge Bagley.

Third, we agree that, at least to some degree, respondent acted with a selfish motive, an aggravating factor under ABA Standard 9.22(b). He took actions at least in part to satisfy his own intense desire to prevail in the various proceedings, even though ultimately on Goertzen's behalf. Indeed, Goertzen testified at the trial panel hearing that, by the time of the mediation that completed the appeals, he still did not understand the court process, why it had taken so long, and what was needed to stop it.

Finally, respondent has refused to acknowledge the wrongful nature of his conduct. We agree with the Bar that respondent has failed to acknowledge that his conduct was detrimental in any respect, specifically that he caused harm to the parents, Judge Bagley, the court system, and the legal profession. That is an aggravating factor under ABA Standard 9.22(g). *McGraw*, 362 Or at 695.

At the same time, we do not accept the Bar's argument that other instances of respondent's conduct during

the disciplinary proceeding reflect a refusal to acknowledge wrongful conduct, as opposed to respondent's attempt to defend his factual and legal positions in the proceeding, such that expanded application of that factor is not appropriate. *See In re Davenport*, 334 Or 298, 321, 49 P3d 91, *modified and adh'd to on recons*, 335 Or 67, 57 P3d 897 (2002) ("Every lawyer should have the opportunity to defend against accusations respecting his or her personal character and professional responsibility without reprisal for doing so."). And, contrary to the Bar's request, we do not apply ABA Standard 9.22(f), which treats making false statements or engaging in other deceptive processes in the disciplinary process, as an aggravating factor. After reviewing the record, we conclude that the Bar's examples fall short.[12]

"[M]itigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. One mitigating factor applies: Respondent has no prior disciplinary record. ABA Standard 9.32(a).

## C. *Prior Case Law and Sanction*

Turning to applicable case law, the Bar and the trial panel have noted that this court has suspended lawyers for more than one year for making misrepresentations and engaging in unnecessary litigation. In *McGraw*, 362 Or at 668, for example, the court imposed an 18-month suspension after the respondent lawyer had abused the litigation process over many years in his role as a wife's conservator by taking numerous, burdensome actions against the husband in violation of RPC 8.4(a)(4) and RPC 4.4(a) (respect for rights of third persons). *See also Stauffer*, 327 Or at 69-70 (two-year suspension for significant amount of unnecessary litigation and misrepresentations, with aggravating factors). And in one case, the Bar points out, the court reciprocally

---

[12] Some of the Bar's examples are based on respondent's testimony about the merit of various factual assertions that we already have discounted; some are based on respondent's ongoing disagreement with the Bar about the legal implications of various litigation outcomes; and some concern statements from respondent, or his questioning of witnesses, that was not entirely consistent with other material in the record, but possibly due to misunderstanding, competing impressions, inadvertent misstatements, or other confusion.

disbarred a lawyer for intentionally and knowingly engaging in protracted litigation in multiple forums over a course of years with the intention to harass and delay, despite admonitions, orders, and sanctions imposed by involved courts. *In re Sanai*, 360 Or 497, 501, 543, 383 P3d 821 (2016).

But several other cases suggest that a six-month to nine-month suspension is appropriate. First, in *Paulson*, 341 Or 13, 28-29, 34, the respondent lawyer was suspended for repeatedly ignoring or violating procedural rules in two proceedings—to his clients' own significant detriment—aggregately resulting in prolonged and more expensive litigation and violating the predecessor rule to RPC 8.4(a)(4). *See id.* at 29 (lawyer brought frivolous claims that lacked merit and continued to pursue them "long after it would have been apparent to any reasonable lawyer that the claims were exceedingly weak and that it was not in his clients' best interest to pursue them"; lawyer also conducted litigation "in an irresponsible and amateurish manner," to the prejudice of his clients). After concluding that the lawyer had acted knowingly and that several aggravating factors applied, the court imposed a six-month suspension.

Second, in *In re Wilson*, 342 Or 243, 149 P3d 1200 (2006), the respondent lawyer intentionally had engaged in dishonesty and misrepresentation, as well as conduct prejudicial to the administration of justice, when she made false statements to opposing counsel and court staff and filed an affidavit containing false statements concerning her own unavailability on a scheduled trial date. After applying two aggravating factors (substantial experience and prior disciplinary record), and also noting the egregious nature of the lawyer's dishonest conduct—in particular, in filing an affidavit containing false statements—the court imposed a six-month suspension.

Finally, in *In re Dugger*, 334 Or 602, 54 P3d 595 (2002), the respondent lawyer knowingly had made misrepresentations to the court on two occasions, including making false statements under oath, and also had engaged in conduct prejudicial to the administration of justice. After emphasizing that intentionally or knowingly making false statements under oath is among the most serious of possible

violations, and applying several aggravating factors, the court imposed a nine-month suspension.

Respondent's misconduct bears some similarity to those cases, but it also differs in some respects. First, although the Bar did not allege or prove that respondent made false statements in violation of what is now RPC 8.4(a)(3) (allegations that the Bar did prove in *Wilson* and *Duggar*), the Bar did allege and prove that he made false certifications, amounting to conduct prejudicial to the administration of justice under RPC 8.4(a)(4). Second, although we have concluded that, in making those false certifications, respondent acted at least negligently, rather than knowingly or intentionally, we have determined that his conduct caused significant harm to participants in the legal system, to the courts, and to the legal profession. Third, and most significantly, respondent not only made false certifications in one proceeding, but he initiated two additional proceedings, alleging judicial misconduct and bias, entirely without foundation, against the judge who ruled against him after he made his false certifications. All of that constituted knowing conduct that, again, was prejudicial to the administration of justice and caused actual and potential harm.

On balance, considering respondent's collective misconduct and the actual and potential harm that it caused, the duties violated, aggravating and mitigating factors, and applicable case law, we, like the trial panel, conclude that the appropriate sanction is a one-year suspension. Respondent at least negligently engaged in misconduct in the 2014 action that is similar to the knowing conduct that warranted a six-month suspension in *Paulson*. And then, apparently in retaliation, respondent engaged in serious misconduct by knowingly filing a judicial fitness complaint against Judge Bagley and a federal action against her and others without any basis in fact. As we have described, his conduct in all three proceedings caused substantial harm to multiple individuals, the court system, and the legal profession. Considering the aggravating factors—including that respondent does not acknowledge causing harm and his pattern of continuing to engage in improper tactics without deterrence, even after he

was sanctioned in the 2014 action—a one-year suspension is warranted.

Respondent is suspended from the practice of law for one year, effective 60 days from the date of this decision.